EDWARD LEE HARVEY, JR., a Minor, by His Mother and Next Friend, PATSY A. HARVEY, Plaintiff-Appellee, v. WILLIE JOHNSON, Defendant. —(MERIT INSURANCE COMPANY, a/k/a MERIT MUTUAL INSURANCE COMPANY, Garnishee-Appellant.)

(No. 60288; )

First District (5th Division)—July 11, 1975.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll and Peter D. McClanathan, of counsel), for appellant.

Reese & Schaffner and Berkson & Gorov, both of Chicago (Arthur M. Gorov and Michael Schaffner, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Garnishee, an insurance company, appeals from a judgment which required it to pay the full amount of a judgment entered against one of its policy holders, Willie Johnson. Basically, garnishee contends that the affirmative defense of noncooperation was established.

A judgment in the amount of $7620 was entered against Johnson in a personal injury action arising out of an automobile accident which occurred on May 18, 1967. At the time of the accident Johnson was insured by garnishee under a policy which included the following provisions, commonly referred to as a "cooperation clause":

> "5. *Assistance and Cooperation of the Insured—Parts I and II.* The insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance * * *.
>
> 6. *Action Against Company—Part I.* No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy. * * *"

Although garnishee filed affirmative defenses, plaintiff was ordered to proceed with the presentation of his case.

Johnson testified on behalf of plaintiff that he never received a summons and complaint in the action brought by plaintiff arising out of the auto accident. He remembers filling out some papers "right after" the accident and sending them to garnishee. Prior to November 9, 1971, he had not been personally contacted regarding the personal injury action, nor had he received any messages that anyone had attempted to contact him regarding this matter. At approximately noon on November 9 he received a message from his daughter-in-law to call a certain number. When he called, a man whom he could not identify told him the case was "coming up" at 1 o'clock that afternoon and he had to come to court. Johnson told the man that he could not appear because he was going to traffic court on an unrelated matter. The man told Johnson to call him when he was through in traffic court. Johnson left traffic court some time after 6:30 p.m. The man called him at home and asked why he had not appeared. Johnson reiterated that he had gone to traffic court. The man did not tell him he was needed in court the next day, nor did he explain

what the consequences of his nonappearance would be. Later a man came to his home and took a statement from him. He was not requested to take time off from work to come to court. He had received no written communications warning him that if he did not appear for trial he would be denied coverage under the policy.

Plaintiff then called James Mavrias as an adverse witness pursuant to section 60 of the Civil Practice Act. He testified that he was an attorney in the office of Stern, Rotheiser and Ginsberg who were retained by garnishee to defend Johnson. The case had been placed "below the black line" (*i.e.*, notification that it would be tried when called) on September 24, 1971. It appeared "above the black line" on November 9, 1971, and was assigned to a trial judge that day. The trial began on November 9 and continued on November 10. A jury verdct was returned on November 10.

On September 14, 1971, a letter was sent to Johnson which read, in its entirety, as follows:

"Willie Johnson
605 East 87th Place
Chicago, Illinois
Re: Harvey vs. Johnson
Court No. 67L8054
Our File No. 15060
Dear Mr. Johnson:
As you know, we are the attorneys retained by your insurance carrier to defend you in the above action.
This case will be coming to trial very soon and it is extremely important that we talk to you about this case.
Please call our office upon receipt of this letter so that we may discuss this matter further.
Very truly yours,
STERN, ROTHEISER AND GINSBERG
James G. Mavrias"

This was the only letter sent to Johnson. He did not speak with Johnson on the telephone before November 9. He attempted to leave messages for Johnson during the week preceding November 9. His case file reflects that he contacted Johnson's daughter-in-law on November 9 and that he spoke with Johnson on the same date. He did not send any letters to Johnson advising him of the consequences of his failure to cooperate. He did not send anyone to see Johnson and ask him to come to the trial.

Mavrias further testified that he spoke with Johnson on the evening of November 9 and informed him that a jury had been selected. He told Johnson to be at his office at 9 o'clock the next morning. Johnson

told him that he had just spent a day in Traffic Court and was not going to spend another day in court. He told Johnson that if he did not appear, he would breach his insurance policy, and that if the policy was breached and a judgment brought in against him, he would have to pay it himself. Johnson replied, "Let them come after me. I don't have anything." Mavrias asked Johnson to reconsider and then call him in the morning.

On November 10 Mavrias moved for a continuance. He related to the judge the conversation he had with Johnson the previous evening. The motion was denied. Since he did not feel he could subpoena his own client against the client's will, he made no effort to subpoena Johnson. He offered to give Johnson's address to plaintiff's attorney if he wished to subpoena him.

He proceeded with the trial and brought in police officers as witnesses. He was aware that there had been a passenger in Johnson's car at the time of the accident but made no attempt to subpoena him.*

Gerald Rotheiser was called as a witness by plaintiff and testified that he was a member of the firm of Stern and Rotheiser who were attorneys of record for Johnson. He had no recollection of having corresponded with Johnson before November 9, 1971. On November 9 Johnson called his

---

* At oral argument it was represented that Willie McVey, the passenger in Johnson's car, testified at the trial. The record did not contain a transcript of the original trial. In view of the following colloquy at the instant trial between Mavrias and plaintiff's counsel, it seems clear that McVey was called by plaintiff:

"Q. [Mr. Gorov, plaintiff's counsel]: You did proceed with the trial, is that correct?

A. [Mr. Mavrias]: The trial did go ahead.

Q. And you brought in the police officers as witnesses?

A. Yes.

Q. And there had been a passenger in Mr. Johnson's automobile at the time of this occurrence?

A. That is what I thought.

Q. Did you attempt to subpoena or bring in that witness to testify?

A. Well, I didn't subpoena him. I tried to bring him in. The time I had talked with Mr. Johnson originally I mentioned the passenger, and they told me, yes, they knew who he was, and I asked them, because they knew him, to inform him about coming for the trial.

In that conversation with Mr. Johnson that evening I asked him about his passenger, and he said that his passenger had moved and that he didn't know where he was.

Q. You didn't attempt to locate him before that time?

A. Before that time?

Q. Did—

A. Before this time I originally attempted to locate him.

Q. Did you attempt to locate him before that?

A. Through the Johnsons.

Q. Other than through the Johnsons?

A. No.

Q. Did you attempt to serve a subpoena on him?

A. No."

office. Rotheiser informed Johnson that the case in which he was involved had been assigned to trial, and that Mavrias needed his testimony and therefore wanted to speak with him. Johnson said he had to be in traffic court at 1 o'clock. He asked Johnson to stop at the firm's office after he was through in traffic court. He did not inform Johnson of the consequences of noncooperation.

Garnishee called Joseph R. Natcke who testified that he is a certified shorthand reporter. On November 13, 1971, he was present, at the behest of garnishee, at an interview with Johnson which was held in Johnson's house. He made a shorthand record of the interview and later transcribed it into typewriting. Portions of this transcript were admitted into evidence, over plaintiff's objection, as declarations against financial interest.

The transcript reflects that Johnson was asked by Mavrias to call after he was finished in traffic court on November 9 but failed to do so. When Mavrias called, he asked him to take a day off from work so that he could appear in court. Johnson stated that he attempted to do so but his boss would not let him go. He needed 4 or 5 days' notice before he could take time off from his construction job. There was no phone on the job site so he could not contact his attorney to tell him he would not appear. He had received Mavrias' letter of September 14, but it had not informed him of the specific trial date. In response to the letter his wife called Stern, Rotheiser and Ginsberg and assured them of cooperation. Johnson was in contact with McVey, the passenger in his car at the time of the accident. McVey was a friend of his and would testify on his behalf.

Following the arguments of counsel, the court stated that it was confronted with a question of fact as to whether garnishee had established its affirmative defense. The court found that prior "to the flurry of activity which took place on November 9th, the insured did in fact cooperate with the insurance company * * * [T]here were not proper efforts taken by the Merit Insurance Company to insure the presence of its insured at the trial."

Opinion

Garnishee contends that the affirmative defense of noncooperation was established. In essence it argues that Johnson's noncooperation was indicated by the fact that he was informed of the time and place of trial but failed to appear, and therefore the holding of the court below was against the manifest weight of the evidence.

■■ In our determination of the instant case we are guided by our recent decision in *Anderson v. Lawlor,* 27 Ill.App.3d 150, 153, 326 N.E.2d 529. There we held:

> "In asserting the affirmative defense of noncooperation, the

burden is on the insurer to prove that it acted in good faith to secure the attendance of the insured and that the insured's failure to appear was due to his refusal to cooperate. (*Ray v. Johnson*, 81 Ill.App.2d 456, 225 N.E.2d 158.) An insurer is not liable for a judgment rendered against its insured if the insured willfully failed to cooperate by refusing to appear at trial after receiving adequate notice. (*Schneider v. Autoist Mutual Insurance Co.*, 346 Ill. 137, 178 N.E. 466; *Mertes v. Central Security Mutual Insurance Co.*, 103 Ill.App.2d 171, 242 N.E.2d 905.) However, the insurer is liable if it was not sufficiently diligent in attempting to secure the insured's appearance (*Hall v. Burnett*, 5 Ill.App.3d 33, 282 N.E.2d 509; *Penn v. Progressive General Insurance Co.*, 74 Ill. App.2d 32, 219 N.E.2d 857; *Panczko For Use of Enright v. Eagle Indemnity Co.*, 346 Ill.App. 144, 104 N.E.2d 645) or if the insured's failure to attend was not due to a refusal to cooperate. *Ray v. Johnson*, 81 Ill.App.2d 456, 225 N.E.2d 158."

In addition, we are cognizant of the well-established principle that a "contract of automobile insurance is more than a simple agreement between two parties that the insurer will indemnify and defend the insured for losses incurred by him in the negligent operation of his automobile. It is a contract which protects both the insured and the public from the hazards of financial distress to which they may become victims as a result of engaging in traffic upon our streets and highways." *Allstate Insurance Co. v. Keller*, 17 Ill.App.2d 44, 48-49, 149 N.E.2d 482; *Popovich v. Gonzales*, 4 Ill.App.3d 227, 280 N.E.2d 757.

■■ In the instant case the trial court found that prior to the "flurry of activity" on November 9, Johnson had cooperated with garnishee. This finding is amply supported by the record. Immediately after the occurrence of the accident, Johnson completed certain forms and returned them to garnishee. He received garnishee's letter of September 14, and garnishee was informed of his intention to cooperate. Johnson kept in contact with McVey, a witness to the accident, and secured from him a promise to testify on his behalf. The record further indicates that garnishee first informed Johnson of the time and place of trial less than 1 hour before the commencement of that proceeding. There is a conflict in the record as to the urgency with which this information was conveyed. In addition, the evidence is in conflict as to whether Johnson failed to appear at trial when requested with a full appreciation of the potential consequences of such failure. In a bench trial, of course, the judge is the trier of fact, and it is he who must weigh the evidence and determine the issue of credibility. (*Hall v. Burnett*, 5 Ill.App.3d 33, 282 N.E.2d 509.) Clearly, the trial court found plaintiff's evidence to the effect that Johnson's ab-

sence did not constitute a failure to cooperate so as to breach the insurance policy to be more persuasive than garnishee's. Having reviewed the record, we will not disturb this finding.

Accordingly the judgment of the trial court is affirmed.

Affirmed.

BARRETT, P. J., and SULLIVAN, J., concur.