MARIA RIVOTA, Indiv. and as Adm'r of the Estate of Jesus Rivota, Deceased, *et al.*, Plaintiffs-Appellants, *v.* DONALD KAPLAN *et al.*, Defendants.—(SENTRY INSURANCE, Garnishee-Defendant-Appellee.)

First District (5th Division)    No. 76-53

Opinion filed May 20, 1977.

Garbutt, Jacobson & Lee, Associated, of Chicago (Jerome J. Jacobson and Mark F. Sheridan, of counsel), for appellants.

Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Joseph B. Lederleitner, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This action arises from a garnishment proceeding brought by plaintiffs against garnishee-defendant, Sentry Insurance Company (Sentry), following entry of judgment against defendant, Donald Kaplan. Sentry answered the summons and affidavit for garnishment, alleging that it possessed no property belonging to the judgment debtor, and moved for summary judgment. Sentry's motion for summary judgment was premised on three grounds: (1) that the insurance policy which plaintiffs sought to garnish, issued to defendant's father, Irving Kaplan, was suspended at the time of the occurrence which resulted in judgment against defendant; (2) that defendant was excluded from coverage under his father's policy by the terms of a restrictive endorsement; and (3) that Sentry was relieved of liability by insured's breach of the condition of notice as required by the policy.

The trial court granted Sentry's motion, and it is from this ruling that plaintiffs now appeal. The sole issue on appeal is whether the trial court erred in granting summary judgment in favor of Sentry. We reverse and remand with directions. The pertinent facts established by the documents of record follow.

On November 17, 1971, Jesus Rivota and four of his children were

standing on the sidewalk near 3429 West North Avenue, Chicago, Illinois. At that time defendant was driving an automobile, owned by Patrick Koch, in an easterly direction along North Avenue. Defendant was using the car with Koch's permission. While driving the car, defendant struck a parked car, propelling it onto the sidewalk, killing Jesus Rivota, and injuring his four children.

On January 18, 1972, Maria Rivota sued both defendant and Patrick Koch for the wrongful death of her husband and the injuries suffered by her children. Defendant filed a *pro se* appearance on January 24, 1972. The complaint was amended on April 28, 1972, to include counts for negligence and wilful and wanton misconduct on the part of defendant.

On May 4, 1970, approximately a year and a half before the accident, Hardware Dealer's Mutual Fire Insurance Company (Hardware) issued an automobile liability insurance policy to Irving Kaplan, defendant's father. The policy was titled "Sentry Auto Policy" and the two companies, Hardware and Sentry, were referred to interchangeably in the policy. The record indicates that the policy was renewed, first by Hardware and then by Sentry, for successive six-month periods running from November 4, 1970, through May 4, 1972. It was during the last policy renewal period that the instant accident occurred.

On June 18, 1970, Irving Kaplan executed an "Exclusion Endorsement" restricting defendant from coverage under the policy. The endorsement was given an effective date of May 4, 1970, corresponding to the date the policy was issued. Neither the declarations, nor the printed form policy issued by Sentry for the last six-month renewal period, November 4, 1971 through May 4, 1972, make any reference to this endorsement. No such endorsement was attached to the copy of the policy for that period.

On October 17, 1971, the following endorsement was issued to Irving Kaplan suspending certain liability coverage under the policy:

"It is agreed that as of the effective date hereof the insurance afforded with respect to the coverages and automobiles indicated below by (x) is suspended in accordance with the request of the insured ° ° °.

° ° °

COVERAGES AND AUTOMOBILES SUSPENDED

| Coverage | (a) All Automobiles | (b) Automobiles Designated Below |
|---|---|---|
| Liability ) Medical Expense ) Protection Against Uninsured Motorists ) | ( ) | (XX) |
| Collision | ( ) | ( ) |
| Comprehensive | ( ) | ( ) |

Designation of Automobile: 67 CHEV IMP 4 DR HT "

914

The Chevrolet Impala was an owned automobile under the policy. It had been involved in an accident on October 16, 1971, and was no longer operable. Coverage was reinstated as to a newly designated automobile on November 30, 1971.

On November 3, 1972, notice was sent to Sentry informing the company that plaintiffs would move for an order of default against defendant for failure to file an answer to plaintiffs' complaint. Sentry was further advised of the proceedings against defendant by a letter from plaintiffs' attorney dated November 7, 1972.

On November 13, 1972, an order of default was entered against defendant. A copy of the order was sent to Sentry. On December 1, 1972, Sentry was served with notice that plaintiffs would offer proof of damages and ask for judgment against defendant. Judgment was entered against defendant on December 12, 1972. A copy of the judgment order was sent to Sentry on December 20, 1972.

On January 11, 1973, Sentry responded by stating that there was no coverage in effect at the time of the loss and, therefore, the company had no obligation to defend defendant. The garnishment action, giving rise to this appeal, followed.

■■ Section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 57(3)) provides that summary judgment is appropriate "* * * if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." Thus, summary judgment is proper when the issue is determinable solely as a question of law. (*Sidwell v. Sidwell* (1975), 28 Ill. App. 3d 580, 328 N.E.2d 595; *Applicolor, Inc. v. Surface Combustion Corp.* (1966), 77 Ill. App. 2d 260, 222 N.E.2d 168.) The right of a party to summary judgment must be clear and free from doubt. *McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679; *Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444.

■■ The first two bases raised by Sentry in support of its motion for summary judgment required the trial court to determine the effect of certain endorsements to the Kaplan insurance policy. Construction of an insurance contract presents only a question of law; it is not submissible to a jury. (*Voss v. Associated Life Insurance Co.* (1976 ), 36 Ill. App. 3d 105, 343 N.E.2d 174; *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 294 N.E.2d 7.) Thus, it is an issue which is appropriate for determination upon summary judgment.

■■ ■ The general principles governing the interpretation and construction of insurance contracts do not differ from those controlling in other contracts. (*Whaley v. American National Insurance Co.* (1975), 30

Ill. App. 3d 32, 331 N.E.2d 571; *Jensen v. New Amsterdam Insurance Co.* (1965), 65 Ill. App. 2d 407, 213 N.E.2d 141.) In construing insurance contracts the court's primary purpose is to give effect to the intention of the parties as expressed therein. (*Goetze v. Franklin Life Insurance Co.* (1975), 26 Ill. App. 3d 104, 324 N.E.2d 437; *Dawe's Laboratories, N.V. v. Commercial Insurance Co.* (1974), 19 Ill. App. 3d 1039, 313 N.E.2d 218.) In the absence of ambiguity, words in the insurance policy are to be given their plain, ordinary and popular meaning. (*Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491; *Goetze v. Franklin Life Insurance Co.*) We find no ambiguities in the policy provisions at issue in the instant case, and thus there is no reason to consider extrinsic evidence to contravene the plain import of the language used in the policy. *General Casualty Co. v. Elam* (1972), 8 Ill. App. 3d 215, 289 N.E.2d 699; *Olipra v. Zambelli* (1971), 1 Ill. App. 3d 607, 274 N.E.2d 877.

Sentry's first basis for summary judgment is that the insurance policy which plaintiffs sought to garnish was suspended at the time of the occurrence which resulted in judgment against defendant. This contention centers around the endorsement, excerpted above, which was issued to Irving Kaplan on October 17, 1971. It is Sentry's position that this endorsement suspended all coverage under the policy in question. We disagree.

Under the policy issued to Irving Kaplan, coverage was provided where an insured became liable for damages arising out of the use of either an owned automobile or a nonowned automobile. The endorsement in question contained provisions for suspending coverage as to all automobiles or only as to certain designated automobiles. Clearly, in the instant case the endorsement was filled in so as to only suspend coverage on a specifically designated automobile, namely, the insured's owned automobile, a 1967 Chevrolet Impala. Coverage was not suspended as to all automobiles, and thus we find that the policy was in effect as to any occurrence which might arise out of the use of a nonowned automobile. In the case at bar defendant was in fact using a nonowned automobile and thus this endorsement did not act to suspend coverage for the instant occurrence.

■■ ■ We find no precedent for concluding that suspension of coverage upon the insured's single owned automobile automatically suspended all coverage under the policy, including that for nonowned automobiles. (*Cf. Freeport Motor Casualty Co. v. Tharp* (1949), 338 Ill. App. 593, 88 N.E.2d 499, *aff'd*, 406 Ill. 295, 94 N.E.2d 139 (1950).) No language in the policy justifies such a construction. Furthermore, an "operator's policy" is recognized in Illinois to cover the use and operation of any motor vehicle not owned by the insured. (*Kenilworth Insurance Co. v. Chamberlain* (1971), 131 Ill. App. 2d 975, 269 N.E.2d 317; *Iowa*

*National Mutual Insurance Co. v. Fidelity & Casualty Co.* (1965), 62 Ill. App. 2d 297, 210 N.E.2d 622; Ill. Rev. Stat. 1973, ch. 95½, par. 7—317.) In addition, we note that no showing was made that it is the custom of the insurance industry that coverage under an automobile liability policy may not exist upon the sale or other disposition of the specified automobile or automobiles alone. Assuming *arguendo* that such is the custom in the insurance industry, it would not form part of the contract of insurance unless known to the insured or unless it was so universal and established that it must be presumed a part of the policy. (*Caster v. Motors Insurance Corp.* (1961), 28 Ill. App. 2d 363, 171 N.E.2d 425; *Freeport Motor Casualty Co. v. Tharp.*) No such showing was made in the instant case. Thus, our conclusion that the suspension endorsement was only effective as to the insured 1967 Chevrolet Impala and did not affect the coverage afforded as to nonowned vehicles.

Sentry's second basis for summary judgment is that the defendant was excluded from coverage under his father's policy by the terms of the following restrictive endorsement:

"AS A CONDITION OF THE COMPANY'S ISSUANCE OF THE POLICY, THE NAMED INSURED CONSENTS AND AGREES WITH THE COMPANY THAT SUCH INSURANCE AS IS AFFORDED BY THE POLICY APPLIES SUBJECT TO THE FOLLOWING PROVISIONS:

SUCH INSURANCE DOES NOT APPLY WHILE ANY AUTOMOBILE INSURED HEREUNDER IS BEING OPERATED BY: DONALD KAPLAN.

SIGNED: Irving Kaplan
DATED: June 18, 1970"

This exclusion endorsement was given an effective date of May 4, 1970, and was made part of the initial policy issued to Kaplan. The endorsement was not re-executed, nor were copies of the endorsement attached to the policies subsequently issued to Kaplan as renewal policies at six-month intervals. It is Sentry's position, however, that the exclusion endorsement, once issued, remained an effective part of each renewal policy. Hence, Sentry contends, a copy of the endorsement need not have been attached to each individual policy.

■■ In support of this contention Sentry points to the following provision in the initial policy:

"This agreement shall apply to each successive policy period for which the company consents to renew or continue this policy but nothing herein shall obligate the company to renew or continue the policy."

We find, however, that this provision is inapplicable to the exclusion

endorsement in question. This provision appears as the last subparagraph of a policy condition entitled "Cancellation by Company Limited." This placement of the clause indicates that the "agreement" referred to in this clause is only the agreement concerning Sentry's cancellation rights.

■■ The cancellation condition provides that the policy, or a renewal thereof, may not be cancelled after expiration of a certain time period unless:

"1. the named insured fails to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof whether payable directly or under any premium finance plan; or

2. the insurance was obtained through fraudulent misrepresentation; or

3. The insured violates any of the terms and conditions of the policy; or

4. the named insured or any other operator, either resident in the same household, or who customarily operates an automobile insured under the policy,

(a) has had his driver's license suspended or revoked during the policy period, or

(b) is or becomes subject to epilepsy or heart attacks, and such individual cannot produce a certificate from a physician testifying to his unqualified ability to operate a motor vehicle, or

(c) is or has been convicted of or forfeits bail, during the 36 months immediately preceding the effective date of the policy or during the policy period, for:

(1) any felony, or

(2) criminal negligence resulting in death, homicide or assault, arising out of the operation of a motor vehicle, or

(3) operating a motor vehicle while in an intoxicated condition or while under the influence of drugs, or

(4) leaving the scene of an accident without stopping to report, or

(5) theft of a motor vehicle, or

(6) making false statements in an application for a driver's license, or

(7) a third violation, committed within a period of 18 months, of (i) any ordinance or regulation limiting the speed of motor vehicles or (ii) any of the provisions in the motor vehicle laws of any state, the violation of which constitutes a misdemeanor,

whether or not the violations were repetitions of the same offense or were different offenses."

Read in the context of this entire provision, it is clear that the clause relied upon by Sentry fulfills two functions. First, it reserves the company's right to cancel the policy if one of the aforementioned conditions is met. Second, it indicates that Sentry is not obligated to renew the policy simply because the insured has not violated any of the cancellation conditions. The clause does not refer back to the exclusion endorsement, nor does it refer to the policy in its entirety, and thus it is ineffective to extend the endorsement agreement to the renewal policies.

This court recognizes that it is a general rule when a policy renewal is made that, unless provided otherwise, the terms of the original policy become part of the renewal contract of insurance. (Couch on Insurance §§68:40, 68:61 (2d ed. 1967). See also *Palmer v. Bull Dog Auto Insurance Association* (1920), 294 Ill. 287, 128 N.E. 499; *Hartford Fire Insurance Co. v. Walsh* (1870), 54 Ill. 164.) However, in the instant case certain provisions contained in the renewal policy issued to Kaplan prevent the exclusion endorsement from becoming a term of the renewal policy.

■■ General condition number 10 of the policy in effect on the date of the occurrence states in pertinent part, that "this policy embodies all agreements existing between himself [the insured] and the company or any of its agents relating to this insurance." In addition, general condition number 7 states, in part, that "the terms of this policy [shall not] be waived or changed, except by endorsement issued to form a part of this policy." Such language is unambiguous, and applying its ordinary meaning leads us to conclude that the exclusion endorsement was not one of the terms of the insurance policy in effect when the accident occurred. It was not written into the policy, nor was it attached as an endorsement. Thus, under general conditions 7 and 10 it could not act to vary the policy provisions.

■■ Assuming *arguendo* that general conditions 7 and 10 could be considered ambiguous as to their effect upon the carryover of the exclusion endorsement to the renewal policy, we would still conclude that defendant was an insured and that the endorsement did not remain in effect. The rule is that ambiguities are to be resolved in favor of coverage. (*Grahame v. Mitchell* (1975), 28 Ill. App. 3d 334, 329 N.E.2d 17.) This judicial policy favoring a liberal interpretation of insurance coverage is a policy aimed at assuring the compensation of victims of injuries which result from traffic or automobile accidents. *Thomas v. Aetna Casualty & Surety Co.* (1975), 28 Ill. App. 3d 363, 328 N.E.2d 374.

Sentry contends that certain statements made by Irving Kaplan at the offices of the insurance company show that he understood (1) that the suspension endorsement applied to all and any coverage under the policy,

and (2) that the exclusion endorsement was intended as a continuous endorsement which would remain effective under any renewals of the policy. They also point to similar evidence of intent contained in affidavits submitted by their agents who dealt with the Kaplan account. It is Sentry's position that this court may not overlook such clear expressions of intent between the contracting parties, and thus we must give effect to these endorsements so as to preclude liability.

In response we note that such extrinsic evidence as to the parties' understanding of the policy provisions is not to be considered where the language used in the written contract is unambiguous. (*General Casualty Co. v. Elam* (1972), 8 Ill. App. 3d 215, 289 N.E.2d 699.) The written instrument speaks for itself in such cases and we must give effect to it as written. As the court stated in *Olipra v. Zambelli* (1971), 1 Ill. App. 3d 607, 610, 274 N.E.2d 877, 879:

> "If the words of the policy are clear and unambiguous the court without consideration of matters extrinsic to the contract should give effect to the plain and obvious import of the language used unless such construction would lead to unreasonable or absurd consequences."

The language in the instant policy is clear and unambiguous, and the effect of the language used does not lead to an unreasonable consequence. Thus the actual intention of the contracting parties is sufficiently expressed in the language of the contract. There is no reason to consider extrinsic evidence to contravene the plain import of the language used in the contract.

■■ Sentry also argues that where the contracting parties agree as to the meaning of, and intent embodied in, an insurance policy, such understanding should not be abrogated at the instance of third persons. In response we note again that we are merely giving effect to the clear wording of the instant policy. In addition, we note that an insurance policy is more than just an agreement between the two contracting parties. As the court stated in *Harvey v. Johnson* (1975), 30 Ill. App. 3d 750, 755, 332 N.E.2d 680, 683:

> "we are cognizant of the well-established principle that a 'contract of automobile insurance is more than a simple agreement between two parties that the insurer will indemnify and defend the insured for losses incurred by him in the negligent operation of his automobile. It is a contract which protects both the insured and the public from the hazards of financial distress to which they may become victims as a result of engaging in traffic upon our streets and highways.' *Allstate Insurance Co. v. Keller*, 17 Ill. App. 2d 44, 48-49, 149 N.E.2d 482; *Popovich v. Gonzales*, 4 Ill. App. 3d 227, 280 N.E.2d 757."

■■ Sentry's final basis for summary judgment is that they were relieved of any liability by the insured's breach of the condition of notice contained in the policy. The policy of insurance provides that:

> "In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. * * *."

Such clauses have been interpreted by Illinois courts as meaning that notice be given within a reasonable time under the circumstances of each case. (*Niagara Fire Insurance Co. v. Scammon* (1881), 100 Ill. 644; *Kenworthy v. Bituminous Casualty Corp.* (1975), 28 Ill. App. 3d 546, 328 N.E.2d 588; *Country Mutual Casualty Co. v. Van Duzen* (1953), 351 Ill. App. 112, 113 N.E.2d 852.) Generally, the question of what is a reasonable time is a question of fact to be decided by the jury. *Higgins v. Midland Casualty Co.* (1917), 281 Ill. 431, 118 N.E. 11; *Kenworthy v. Bituminous Casualty Corp.*

■■ In the case at bar, defendant filed a *pro se* appearance in January of 1972. Sentry, however, did not receive notice of legal action against defendant until November of 1972, almost one year after the occurrence. Notice was not provided by the insured, but rather was in the form of plaintiffs' motion for entry of a default judgment against defendant. The fact that it was the injured rather than the insured who provided notice, however, is not significant since under such policy provisions "[i]t does not matter who gives the notice, as long as a notice is given * * *." *Simmon v. Iowa Mutual Casualty Co.* (1954), 3 Ill. 2d 318, 323, 121 N.E.2d 509, 512.

The mere fact, however, that a delay in notice occurred is not sufficient in itself to entitle Sentry to summary judgment in its favor. One factor which must be considered in such cases is the insured's reasons for failing to notify his insurer of a possible claim against him. Illinois courts have held a delay of four months unreasonable where no apparent reason existed for such a delay (*Charter Oak Fire Insurance Co. v. Snyder* (1974), 22 Ill. App. 3d 350, 317 N.E.2d 307), but have refused to hold a delay of almost one year unreasonable as a matter of law where the insured reasonably believed that the occurrence was not covered by the policy. *Farmers Automobile Insurance Association v. Hamilton* (1975), 31 Ill. App. 3d 730, 335 N.E.2d 178, *aff'd*, 64 Ill. 2d 138, 355 N.E.2d 1 (1976).

In the instant case, Irving Kaplan apparently believed that defendant was not an insured under his policy, and he stated that defendant also held this belief. These beliefs were based upon the exclusion endorsement

which had been executed and attached to the initial policy of insurance. While our findings today make it clear that these beliefs were mistaken, we cannot say as a matter of law that they were unreasonable. A jury might conclude differently.

■■ The purpose of notice to the insurer of a claim against its insured is to enable the insurer to make a timely and adequate investigation of the occurrence. (*Kenworthy v. Bituminous Casualty Corp.*; *McFadyen v. North River Insurance Co.* (1965), 62 Ill. App. 2d 164, 209 N.E.2d 833.) Thus, prejudice to the insurer is another factor which determines what is a reasonable time in which to give notice. (*Kenworthy v. Bituminous Casualty Corp.*) While many months had elapsed since the occurrence in the instant case, it is undisputed that Sentry received notice both before any order of default was entered against defendant and before any judgment was entered on that default. In addition, defendant had apparently done nothing to either enhance or inhibit his defense in the months following his *pro se* appearance. Under such circumstances we cannot say that the evidence of prejudice to Sentry is so clear as to warrant summary judgment in its favor based on this issue. A jury could decide that the company suffered no prejudice because of the delayed notice.

We find therefore that the issue of reasonable notice in the instant case is one of material fact. Whether the reasons underlying insured's failure to give notice are reasonable, and whether Sentry's ability to investigate and prepare its case was prejudiced are questions for the jury to decide.

For the foregoing reasons the judgment of the circuit court of Cook County granting summary judgment in favor of Sentry is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion on the issue of delayed notice.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.