BROTHERHOOD MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. LOUIS M. ROSETH *et al.*, Defendants-Appellees.—BROTHERHOOD MUTUAL INSURANCE COMPANY, Plaintiff-Appellant and Cross-Appellee, v. LOUIS M. ROSETH *et al.*, Defendants-Appellees and Cross-Appellants (John P. Curtin *et al.*, Defendants-Appellees).

First District (5th Division) Nos. 87—2164, 87—3507 cons.

Opinion filed December 9, 1988.

Christine E. Smith and John J. O'Connor, both of Chicago, for appellant.

Daniel S. Mathless and Jody B. Rosenbaum, both of Baum, Glick & Wertheimer, P.C., of Chicago, for appellees Louis M. Roseth and Rosemarie E. Roseth.

Donald J. O'Brien, Sr., James J. Reidy, and Michael W. Rathsack, all of Chicago, for appellee John P. Curtin.

JUSTICE MURRAY delivered the opinion of the court:

In these consolidated cases, plaintiff Brotherhood Mutual Insurance Company (BMI) appeals from an order of the circuit court of Cook County denying its motion for summary judgment and granting summary judgment to defendant John Curtin relative to insurance coverage under a homeowner's policy issued by it to its insureds, defendants Louis and Rosemarie Roseth (appeal No. 87—2164). The

Roseths cross-appeal from an order denying their post-trial motion for attorney fees and costs against BMI (appeal No. 87—3507).

The pertinent facts are as follows. On April 23, 1983, the Roseths attended a birthday party for John Curtin at his mother's home; Rosemarie Roseth is John's godmother and his third cousin. Curtin and Louis Roseth were shot when a gun Louis was handling discharged; the bullet struck Louis in his finger and Curtin in his arm. Curtin was subsequently hospitalized for four months during which time Catherine Curtin, John's mother, was in frequent contact with Rosemarie Roseth, reporting John's progress. After Curtin was discharged from the hospital, he telephoned Rosemarie frequently, keeping her apprised of his condition. Rosemarie related some of her conversations with John and his mother to Louis.

On April 3, 1985, Curtin telephoned Rosemarie, told her his medical coverage for the accident was running out, and requested to see her homeowner's policy to ascertain whether the policy provided coverage for the accident. Curtin also called Louis on April 5 concerning the same matter. On April 5, Curtin picked up a copy of the Roseths' policy. On April 17 and 18, an investigator from the office of an attorney hired by Curtin interviewed the Roseths. On April 23, Louis Roseth was served with a summons in a personal injury lawsuit filed by Curtin based on the shooting incident. Louis notified BMI of the lawsuit two days later.

On August 15, 1985, BMI filed a complaint for declaratory relief, alleging the Roseths were excluded from coverage under their policy for failure to comply with its notice and "cooperation" provisions. The complaint also alleged Louis intentionally shot Curtin, thereby barring coverage under the policy. BMI and Curtin both subsequently filed motions for summary judgment. On June 8, 1987, the trial court denied BMI's motion and granted Curtin's, finding that the Roseths' notice to BMI was made within a reasonable time.

On July 1, 1987, the Roseths filed a post-trial motion for attorney fees and costs. On July 6, BMI filed an appeal from the court's June 8 order granting Curtin summary judgment. On November 10, the trial court denied the Roseths' motion for attorney fees and costs and, on November 18, the Roseths' filed an appeal limited to the trial court's denial of their motion. Both appeals were consolidated by this court.

The pertinent provisions of the insurance policy at issue here are as follows:

"WHAT YOU MUST DO IN CASE OF LOSS
1. Notice
 a. In case of loss or if an insured becomes aware of anything

that indicates there might be a claim under this policy, he or she must:

(1) promptly give us or our agent notice ***."

BMI's complaint for declaratory relief, incorporated and made a part of its motion for summary judgment, also alleged that the Roseths were excluded from coverage pursuant to its "Exclusions" provision, *i.e.*:

"EXCLUSIONS

1. Exclusions That Apply To Both Personal Liability and Medical Payment To Others—This policy does not apply to liability:
* * *

h. resulting from bodily injury or property damage caused *intentionally* by or at the direction of any insured ***."
(Emphasis added.)

In appeal No. 87—2164, the Roseths initially argue that this court lacks jurisdiction to entertain BMI's appeal, contending that the order appealed from was not a final order because it did not contain a Supreme Court Rule 304(a) finding (107 Ill. 2d R. 304(a)) and their post-trial motion for attorney fees, which preceded BMI's notice of appeal, is a separate claim which the trial court had not yet adjudicated at that time.

■ Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) requires that where multiple parties or multiple claims for relief are involved in an action, no appeal may be taken from a final judgment as to one or more but fewer than all the parties or claims *unless the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal.* "In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (107 Ill. 2d R. 304(a); see also *Ferguson v. Riverside Medical Center* (1986), 111 Ill. 2d 436, 490 N.E.2d 1252.) The purpose of Rule 304(a) is "to discourage piecemeal appeals in the absence of just reason, and to remove the uncertainty which exists when a final judgment is entered on less than all the matters *in the controversy.*" (Emphasis added.) *Mares v. Metzler* (1980), 87 Ill. App. 3d 881, 884, 409 N.E.2d 447; *Petersen Brothers Plastics, Inc. v. Ullo* (1978), 57 Ill. App. 3d 625, 630, 373 N.E.2d 416.

■ In the instant case, prior to submission of the Roseths' motion for attorney fees, the trial court ruled that its order was "final and appealable." We have held this language is not the equivalent of a

Rule 304(a) finding. (See *Hamer v. Lentz* (1987), 155 Ill. App. 3d 692, 508 N.E.2d 324.) However, we find that a Rule 304(a) finding was not required under the circumstances here. Notwithstanding the fact that the Roseths filed their motion for fees prior to BMI's notice of appeal, this court has recognized a distinction between a claim for fees which is brought as part of a principal action and a claim made after the principal action has been decided. (*Hise v. Hull* (1983), 116 Ill. App. 3d 681, 452 N.E.2d 372.) In the latter situation, like the situation here, a Rule 304(a) finding is not required. The filing of a motion for attorney fees after a judgment in the principal action is an incidental or collateral matter; it is not a motion attacking the judgment and therefore does not affect the judgment appealed from or nullify an earlier notice of appeal. (*Town of Libertyville v. Bank of Waukegan* (1987), 152 Ill. App. 3d 1066, 504 N.E.2d 1305.) In the present case the Roseths' request for attorney fees was not made a part of the principal action, it was not a matter in controversy, and it cannot be deemed to have been "pending" or at issue at the time BMI filed its notice of appeal; the motion for fees was filed *after judgment* in the principal action. Accordingly, a Rule 304(a) finding was not required and this appeal is properly before us.

We next address BMI's argument that the trial court erred in finding that the Roseths' notice to BMI was reasonably timely and in granting Curtin summary judgment. Specifically, BMI contends that "the only reasonable inference from the facts and circumstances is that there were things which should have indicated to ROSETH that there might be a claim under the policy and that his failure to give notice until more than two years following the occurrence is 'late notice' as a matter of law."

■ Whether an insured gave notice to the insurer within a *reasonable time* is generally a question of fact (*Higgins v. Midland Casualty Co.* (1917), 281 Ill. 431, 118 N.E. 11), but, where the facts are undisputed, the question of the sufficiency of notice becomes a question of law (*INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 379 N.E.2d 34), and summary judgment is proper where no fair-minded person could draw different inferences from those facts (*Ding v. Kraemer* (1978), 59 Ill. App. 3d 1042, 376 N.E.2d 266).

Here, BMI contends that the Roseths should have notified it of a claim immediately after the shooting incident. The gist of BMI's argument is that based on the Roseths' continuous contact with Curtin and knowledge of the seriousness of his injury and the fact that he was unemployed at the time, as well as their alleged sophisticated background (Louis is a graduate of Northwestern University Business

School and a marketing consultant and Rosemarie is a college graduate and has done social work and accounting), they should have been put on notice of the possibility of a claim by Curtin against them. The Roseths assert that they had no reason to believe a claim would be filed against them in fact because of their close relationship to Curtin and their belief that their homeowner's policy would not cover injuries to others outside their home. They further contend that they only had a layman's knowledge of insurance matters; Louis has neither studied nor taken courses in insurance and has never had any job responsibility involving insurance and Rosemarie has neither studied nor taken courses in insurance.

In *Barrington Consolidated High School v. American Insurance Co.* (1974), 58 Ill. 2d 278, 282-83, 319 N.E.2d 25, our supreme court addressed the issue of whether the existence of an occurrence is sufficient to put an insured on notice that a claim will follow, and stated:

"It cannot be plausibly said that by the notice provision the insurer intended that *every occurrence or accident* had to be reported to it. Rather such notification was not intended to be furnished, or it was intended that it was to be excused if under the circumstances of the occurrence or accident *there was no ground for the insured as a reasonable person to believe that a claim under the policy would be made.*" (Emphasis added.)

We believe that fair-minded people would agree that the above facts lead to the conclusion that because of the very nature of the relationship between the Roseths and Curtin and their continued contact, there was no reason to put them on notice that Curtin might file a claim against them. In fact, almost two years had elapsed from the time of the shooting incident and only then did Curtin file a claim because his own insurance had run out. Accordingly, the "lateness" of the Roseths' notice would be excused under the above reasoning if, additionally, their belief that their policy did not cover injuries to others outside their home was reasonable based upon the level of their "sophistication" under the circumstances here. See *Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910, 364 N.E.2d 337 (an insured's belief of noncoverage, though erroneous, may excuse a delay in notice).

The standard used in determining an insured's sophistication is based on his experience not only in the world of commerce but also insurance. (*Brownlee v. Western Chain Co.* (1979), 74 Ill. App. 3d 804, 393 N.E.2d 515.) We find *Farmers Automobile Insurance Association v. Hamilton* (1975), 31 Ill. App. 3d 730, 734, 335 N.E.2d 178, *aff'd* (1976), 64 Ill. 2d 138, 355 N.E.2d 1, instructive with respect to

the problems of an insured in deciphering whether a shooting is covered by a homeowner's policy, *i.e.*:

> "The occurrence which is the subject of this law suit is not the same as an automobile accident covered by a typical insurance policy. The law is clear on the question of notice under the average automobile liability insurance. However, a homeowners policy as issued by the appellee requires some study as to its various provisions."

In the present case, the trial court determined that the Roseths' notice to BMI was reasonable based upon the facts that the insurance policy was not a liability policy, but rather a homeowner's policy purchased to insure against loss to their home and personal property and medical coverage if a person was injured in their home. Since the incident occurred outside of the Roseths' home, it is reasonable to conclude that the Roseths believed they had no coverage for the incident. As the trial court further noted, this fact was fortified by Louis' failure to make a claim for his own injury. Additionally, as the record indicates, the Roseths had never taken courses in insurance and had no other experience relative thereto. Accordingly, although almost two years elapsed between the time of the incident and the Roseths' notice of a claim to BMI, we find that any delay in notice was excused under the circumstances. In light of the foregoing, we hold that the trial court's finding of reasonable notice was proper.

■ Similarly, we reject BMI's brief argument that the Roseths breached the cooperation provision of the policy. BMI's own admissions show that the Roseths cooperated; its insurance adjuster stated that the Roseths' post-notice cooperation was adequate and that the 20-day gap between Curtin's request to see the Roseths' policy and their notice to BMI "didn't really make a difference," and, as stated above, they almost immediately notified BMI of a claim upon service of summons on Louis.

■ An additional issue in this appeal, not raised by the parties but by this court during oral argument, is whether the trial court's judgment ordering BMI to indemnify the Roseths for any judgment which may be entered against them in the underlying personal injury action should be reversed on the ground that it is premature because the Roseths' liability in the underlying action has not yet been determined. Generally, "[a] declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not then ripe for adjudication." (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill.

App. 3d 150, 156, 466 N.E.2d 1091.) An exception to this rule exists only where the issues raised in the declaratory judgment action are separable from those in the underlying action, "the primary concern being that an untimely determination in the declaratory judgment action could subsequently prejudice a party in the underlying action through application of collateral estoppel." *Maryland Casualty Co.*, 126 Ill. App. 3d at 157.

The parties in the instant case were directed to file supplemental authority on this issue. BMI argues that "[t]here are factual issues to be resolved in the instant case to determine whether there is coverage under the insurance policy, such as whether the insured may have been negligent or whether there was an intentional act or whether there was collusion." The Roseths argue that the issue in the declaratory judgment action is separable from the issues in the underlying personal injury action; the issues in the former pertain to the trial court's finding of reasonable notice and the issues in the latter pertain to the elements of negligence alleged against them. Curtin's argument on this issue is similar to the Roseths. Additionally, the Roseths contend that, in any event, BMI has waived argument on this issue because it failed to raise it in the trial court and on appeal. In support thereof, the Roseths rely on Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), which provides that points not argued in an appellant's brief are waived and shall not be raised in its reply brief, in oral argument, or a petition for rehearing.

■ Under the circumstances here, we reject the Roseths' waiver argument based upon *Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 211, 443 N.E.2d 563, where our supreme court, in discussing Rule 341(e)(7), stated that the rule is " 'an admonition to the parties, not a limitation upon the jurisdiction of the reviewing court.' [Citation.] Moreover, Rule 366, which has been held analogous to the plain error doctrine in criminal review [citation], provides: '(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just *** (5) give any judgment and make any order *** and further orders and grant any relief *** that the case may require.' [Citation.] While this court has recognized that this power of review is limited by the need to ensure an adequate opportunity for litigants to present argument [citation], the matter which we address involves only a question of law which presents no evidentiary problem." Accordingly, in the instant case, we are not precluded from considering the prematurity of the trial court's ruling ordering BMI to indemnify the Roseths for any judgment rendered against them, especially in light of the fact that this is a question of law and the par-

ties have had an opportunity to present argument in this court and through their respective supplemental memorandums of law.

 Having considered the record and the parties' arguments, we reverse that portion of the court's judgment ordering indemnification based on the wording of the trial court's order and issues raised in BMI's declaratory judgment complaint, which was incorporated in its motion for summary judgment, but not addressed by the trial court. Specifically, the pertinent part of the court's order states:

"2. Roseths *are covered* under their Policy No. 12H6B127890.

3. Brotherhood pay *any judgment* entered in favor of John P. Curtin against Roseths in the case entitled John P. Curtin v. Louis M. Roseth, et al. 85 L 7650 in accordance with the terms of the coverage of said policy." (Emphasis added.)

We believe that this language can be interpreted not only as ordering *potential indemnification,* as the Roseths argue, but also *ultimate indemnification,* which would affect BMI's defenses concerning its duty to pay prior to a determination of its liability. That BMI will raise such defenses is indicated in its declaratory judgment complaint as well as in its supplemental memorandum of law. Accordingly, although the trial court had authority to determine coverage on the notice issue, which is separable from the issues in the underlying personal injury action, the same cannot be said about its determination of indemnification. To avoid any possible prejudice to BMI, therefore, based on the court's order, which can be interpreted as ordering *ultimate indemnification,* the trial court's finding as to indemnification must be vacated without prejudice to the rights of the parties should any question arise with respect to them.

 Briefly, we also note that the language of the court's order determining coverage pursuant to its finding of reasonable notice is misleading. It fosters a construction of blanket coverage notwithstanding BMI's allegation in its declaratory judgment complaint, on which the trial court made no finding and properly could not have, that the Roseths are not covered because the shooting was intentional. Accordingly, this portion of the court's order must be modified to reflect that coverage exists based on the court's sole finding that the Roseths gave BMI reasonable notice pursuant to the notice provision of the policy.

 We next address the issues raised by the Roseths in their cross-appeal for attorney fees and costs (No. 87—3507). They first argue that BMI has acted unreasonably and vexatiously in delaying settlement of their claim. This contention is based upon the Roseths' rea-

soning that since the trial court subsequently found that they acted reasonably in notifying BMI of Curtin's claim, BMI's filing of an action for declaratory relief should be retroactively deemed unreasonable. We find this argument without merit. Clearly, whether the Roseths' late notice to BMI was made within a reasonable time was a legitimate insurance coverage question and BMI acted reasonably in seeking a determination by the court under the circumstances. Accordingly, the Roseths are not entitled to attorney fees and costs under section 155 of the Insurance Code of 1937 (Ill. Rev. Stat. 1985, ch. 73, par. 767).

We similarly reject the Roseths' last two contentions in this appeal, *i.e.*, they are entitled to fees under the contract language of their policy and denial of fees would result in lost benefits to them under the policy. The policy provision at issue provides as follows:

> "3. Claims and Defense Expense Coverage. We pay the following expenses incurred in connection with a suit defended by us under the Personal Liability coverage:
>
> * * *
>
> d. other necessary expenses incurred *at our request*; ***."
> (Emphasis added.)

We first observe that it is well settled that an insured may not recover attorney fees and costs for *bringing* a declaratory judgment action against an insurer in the absence of a showing of vexatiousness. (*Tuell v. State Farm Fire & Casualty Co.* (1985), 132 Ill. App. 3d 449, 477 N.E.2d 70; *Brown Bag Co. v. Bituminous Casualty Corp.* (1969), 117 Ill. App. 2d 287, 254 N.E.2d 577.) We believe it logically follows that an insured may not recover fees and costs for *defending* a declaratory judgment action brought by an insurer under similar circumstances.

The Roseths also argue that the police provision provides for reimbursement to them for expenses incurred "at the request" of BMI. They assert that BMI's summons and complaint for declaratory relief demanded/requested them to appear and defend at the risk of having their coverage extinguished. At the heart of their argument is an interpretation of the word "request." This point was not raised in the trial court and it is therefore waived on appeal. See *People ex rel. White v. Busenhart* (1963), 29 Ill. 2d 156, 193 N.E.2d 850.

The Roseths' last "argument" is that if they are not awarded attorney fees, "they will lose benefits to which they are entitled under their policy." In support thereof they cite to *Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, 474 N.E.2d 953, and *Green v. J.C. Penney Auto Insurance Co.* (7th Cir.

454

1986), 806 F.2d 759, where the insureds were awarded attorney fees and costs based on the insurers' breach of their contractual duty to defend. However, a breach of duty to defend the Roseths is not at issue in the instant case. Moreover, as discussed above, we have determined that an insured may not recover attorney fees and costs for defending a declaratory judgment action by an insurer absent a showing of vexatiousness.

For the foregoing reasons, the judgment of the circuit court in appeal No. 87—2164 is affirmed and modified in part and reversed in part, and the judgment in appeal No. 87—3507 is affirmed.

Appeal No. 87—2164, Affirmed and modified in part; reversed in part.

Appeal No. 87—3507, Affirmed.

LORENZ, P.J., and PINCHAM, J., concur.