**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,**
Plaintiff–Appellee,

v.

**BAKER & McKENZIE, Federal Deposit Insurance Corporation, Jon R. Bauman, F. Richard Bernasek, and Scott Bradley,**
Defendants–Appellants.

Nos. 92–1718, 92–1763, 92–1864, 92–1991.

United States Court of Appeals,
Seventh Circuit.

Argued April 29, 1993.

Decided June 22, 1993.

Edward M. Kay, Mary F. Stafford, James O. Nolan, James T. Ferrini (argued), Mark

Seplak, Susan Condon, Imelda Terrazino, Clausen, Miller, Gorman, Caffrey & Witous, Gary Kostow, Kostow & Daar, Chicago, IL, for plaintiff-appellee.

Hugh C. Griffin, Diane I. Jennings, Richard E. Mueller, Lord, Bissell & Brook, Chicago, IL, for Baker & McKenzie.

Lowell E. Sachnoff, Carolyn H. Rosenber-Safer, Rebecca A. Cochran, Anne K. Berleman, Mary B. Koberstein, Sachnoff & Weaver, Chicago, IL, Thomas E. O'Connor, Jr., Arder, Hadden, Johnson & Bromberg, Dallas, TX, Nancy L. Bethurem, Rubinstein & Perry, Dallas, TX, Charles B. McDonald (argued), F.D.I.C., Washington, DC, for F.D.I.C.

Jon R. Bauman, pro se.

F. Richard Bernasek, pro se.

Scott Bradley, pro se.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

In 1981 the Dallas law firm of Jenkens & Gilchrist began representing the Vernon Savings & Loan Association. On October 7, 1986, three lawyers, named Bauman, Bernasek, and Bradley, employed by Jenkens & Gilchrist left the firm to become partners in the Dallas office of Baker & McKenzie, a law firm that already had almost a thousand lawyers. (The three lawyers are no longer with Baker & McKenzie, but that has no bearing on the case.) In March 1987, Vernon Savings & Loan collapsed, leaving the Federal Deposit Insurance Corporation (actually the Federal Savings and Loan Insurance Corporation, but it was later absorbed by the FDIC and we shall pretend it never existed) holding the bag as receiver. In April 1987, Baker & McKenzie applied for a professional liability insurance policy from National Union Fire Insurance Company for the period from July 15 of that year to the following July 15. The application listed all the firm's then lawyers, including the three lawyers who had come over from the Jenkens firm. National Union issued the policy, which insured not only the firm but also its partners, had a coverage limit of $15 million with a deductible of $7 million (the $7 million is actually a combination of a deductible and what the policy calls a "self-insured retention," but we have not been able to discover the difference between these descriptions), and covered "any claim ... first made against the insured and reported to the Company during the policy period." A claim is first made during the policy period if, during that period, either "a claim alleges damages which are payable under this policy" or the insured "shall have knowledge or become aware of any act, error or omission which could reasonably be expected to give rise to a claim under this policy and shall during the policy period ... give written notice thereof to the Company" even if the actual claim is made after the period has expired. A claim is considered "reported" to the insurance company when the company "first receives written notice of the claim or of any event which could reasonably be expected to give rise to a claim."

■ Conventional liability insurance policies are "occurrence" policies; they insure against a negligent or other liability-causing act or omission that occurs during the policy period regardless of when a legal claim arising out of the act or omission is made against the insured. Because of the indefinite future liability to which an occurrence policy exposes the insurance company, these companies now offer (also or instead) "claims made" policies, which limit coverage to claims made during the policy period. The coverage is less, but so, therefore, is the cost. The "could reasonably be expected" clause that we quoted broadens the coverage of this claims-made policy by enabling the insured in effect to accelerate a future claim and thus bring it within the current policy period. If the insured reasonably expects to be sued, he can by reporting his expectation to the insurance company treat the expected claim as an actual one and thus be insured when it becomes actual.

■ On September 9, 1987 (the policy year, recall, had begun on July 15), the FDIC wrote each of the three lawyers who had come over from Jenkens & Gilchrist to Baker & McKenzie an identical letter, captioned "Notice of Claims," telling them it intended

to seek to recover from them the losses that Vernon had sustained as a result of misconduct by Jenkens & Gilchrist. The letter did not mention Baker & McKenzie. The lawyers immediately gave copies of this letter to Jenkens & Gilchrist's liability insurer—and also to members of the executive committee of Baker & McKenzie. Apparently the committee concluded that the National Union insurance policy did not cover a claim arising out of alleged misconduct committed by Baker & McKenzie lawyers before they had come to the firm, for a memo dated September 11, 1987, from one member of the committee to another asks, "Would it nevertheless not be desirable that we notify our carrier?" Baker & McKenzie did nothing. Sometime between July and September an attorney employed by National Union named Seaman had received a copy of Baker & McKenzie's application for insurance; a copy of the FDIC's letter of September 9 to the lawyers; and copies of several other notices of claim against Jenkens and its former partners, including the three lawyers who had joined Baker & McKenzie, arising out of the collapse of Vernon and of other savings and loan associations in Texas.

The National Union policy expired on July 15, 1988, but was renewed for another year on substantially identical terms. On August 23, 1988, during the second policy year, Baker & McKenzie's "risk manager" inquired of the same member of the executive committee to which the quoted memorandum had been addressed whether Baker & McKenzie didn't have "sufficient knowledge" of an act, error, etc. that could reasonably be expected to give rise to a claim to require that "this claim" be reported to National Union. Baker & McKenzie still did not notify National Union.

It appears that in January 1989 the FDIC requested one of the three lawyers to furnish it with a copy of Baker & McKenzie's professional liability insurance policy, and he forwarded the request to Baker & McKenzie. On May 2, Baker & McKenzie finally sent written notice of the FDIC's claim against the three lawyers to National Union. Also in May the Jenkens firm's insurance carrier, which up to this time had been representing the firm's former partners, including the three lawyers who had gone from Jenkens to Baker & McKenzie, dropped that representation, having concluded that its policy did not cover the wrongful acts of former partners.

In March 1990 the FDIC finally filed its suit against former members of the Jenkens firm, including the three lawyers. That case is scheduled for trial. Two months before the FDIC's suit was filed, National Union had brought the present action against Baker & McKenzie, the three lawyers, and the FDIC (whose presence as a party conferred federal jurisdiction over the suit, 12 U.S.C. § 1819(b)(2)(A); 28 U.S.C. § 1331) seeking a declaration that National Union's insurance policy does not cover the claim against the lawyers because it was first made but not reported during the first policy year and alternatively because the policy excludes coverage for misconduct committed by a lawyer before he joined the firm. The district judge agreed with the first ground and gave judgment for National Union without reaching the second ground.

There is no question that a claim was reported by Baker & McKenzie during the second policy period; but if that claim was "first made" during the first policy period yet not reported then, it is not covered by the policy. If during the period in which a policy is in force the insured learns of an act or omission or other event that can reasonably be expected to give rise to a claim, a claim made in a subsequent period is not covered unless the insurance company received written notice of the event during the policy period; for the claim is deemed to have been "first made" during the period in which the insured first learned of an event that could reasonably be expected to result in the eventual filing of a claim.

There is, it is true, an ambiguity in the policy. On the one hand, coverage is limited to claims first made *and reported* during the policy period. On the other hand, when the claim is not an actual one but is merely the reasonable expectation of a future claim, it is "first made" during the policy period only if the insured reports the occurrence giving rise to the expectation during that period. Read literally, this second provision implies that it is the insured's choice whether to

accelerate the future claim to the current policy period, and therefore that by not reporting the future expected claim he can wait until an actual claim is filed and rely on his coverage in the period when it is filed rather than in the current period. On this construal, Baker & McKenzie's claim was "first made" in the second policy year because it was first reported then (May 2, 1989). However, Baker & McKenzie does not make this argument (which might not help it much, because it did not notify National Union, when it applied for a renewal of the policy for a second year, that it had "banked" a claim for possible reporting in that period). It concedes that if it had a reasonable expectation in the first policy period that a claim would be made against it, that expectation had to be reported to the insurance company in that period.

This wrinkle to one side, if the September 9, 1987, letter to the three lawyers, which they turned over to Baker & McKenzie, is deemed a claim alleging damages payable under the policy rather than an event, then clearly it was required to be reported during the first policy year, and it was not. We should have thought that the letter fitted the policy's definition of a claim comfortably; but, curiously (especially in light of our discussion in the preceding paragraph), National Union does not argue that. It prefers to regard the letter as having informed Baker & McKenzie of an event (the alleged tortious misconduct of three new partners) that could reasonably be expected to precipitate a claim under the policy (for the policy made partners of Baker & McKenzie additional insureds) sometime in the future. If so, Baker & McKenzie was—it admits—required to report the event to National Union during that year if it wanted coverage for a claim filed subsequently, unless the letter did not place it on notice of an impending claim. We think it plain that the letter did place Baker & McKenzie on notice of an impending claim. True, National Union believes (it was its alternative ground in the district court) that the policy does not in fact cover the alleged misconduct of the three lawyers before they joined Baker & McKenzie. But Baker & McKenzie believes the contrary, for although the policy terminates coverage for partners after they leave the partnership it says nothing about excluding coverage for partners' conduct before they joined the partnership. At all events, if Baker & McKenzie's belief concerning the coverage of the policy is wrong (an issue on which we take no position), it must lose; and if its belief is right, this means that, as a sophisticated insured (compare *Brotherhood Mutual Ins. Co. v. Roseth,* 177 Ill.App.3d 443, 126 Ill.Dec. 669, 673, 532 N.E.2d 354, 358 (1988)), it should have realized that a suit against the three lawyers might trigger coverage under the policy, unless some intervening change of law, startling discovery, or other unusual circumstance had made what would originally have been a reasonable expectation of claim and coverage suddenly unreasonable; this is not suggested.

We can imagine Baker & McKenzie arguing that the September 9 letter did not alert it to an impending claim *against the law firm,* as distinct from the partners. It does seem unlikely that anything the partners had done before they joined Baker & McKenzie could expose the firm to a suit by the FDIC arising out of the insolvency of Vernon Savings & Loan. But Baker & McKenzie does not make the argument, perhaps believing that as the principal insured it was the agent for its partners, the additional insureds, and that if it fell down on its agency responsibilities and as a result the three partners have no insurance coverage it is liable to them. At all events, whatever the firm's stake in this case, the partners are insured by the policy too.

It is irrelevant that the September 9 letter did not mention the Baker & McKenzie policy. It would be strange if it had. Tort plaintiffs, except in direct-action states, of which neither Texas nor Illinois is one, do not name their defendants' insurers in their complaints or other demands. Often they do not know who their defendants' insurers are, or even whether the defendants *have* insurance. They name the defendant and he scurries off to notify any insurer whose policy might conceivably cover the case. It would have cost Baker & McKenzie essentially nothing to notify National Union of the September 9 letter. The only reason that has

been offered for why it did not do so is that it may have feared that its premiums would be raised for the next policy period if National Union knew of the potential claim under the existing policy. But that is merely an additional reason for insisting that the notification requirements of the policy be complied with.

The defendants' alternative argument is that National Union *had* timely notice of the event giving rise to a potential claim, albeit not from the insureds. For its man Seaman had documents from which it could be inferred that a claim would eventually be made under the Baker & McKenzie policy. But to have drawn this inference Seaman would have had to read and memorize all 899 names in Baker & McKenzie's application for insurance so that months later when he saw the names of the three lawyers in letters from another National Union insured the proverbial light bulb would have lit up in his brain. It is true that the policy does not require that the notice of claim (or event giving rise to a potential claim) come from the insured, and at argument National Union's lawyer conceded that if the FDIC had sent its notice of claim directly to National Union this would have satisfied the reporting requirement. But it does not follow that the requirement is satisfied by demonstrating that a sophisticated system of computerized data and retrieval might have enabled National Union through collation of documents from different sources to form an informed judgment that it was likely someday to receive a claim from Baker & McKenzie. It is far easier for the insured to lick a postage stamp. Perhaps some day insurance companies will obtain the sort of computer capabilities of which we speak hypothetically and then no doubt competition will force the companies to relax their reporting requirements. The day is not yet come. The requirements are clear and easy to comply with and nothing in the policy waived their application to this case. The judgment for National Union is therefore

AFFIRMED.