**SIXTH DIVISION**
**MAY 28, 2010**

No. 1-08-1156

| | | |
|---|---|---|
| JAMES BERGLIND, Individually and as Father and Next Friend of Joseph Berglind, a minor, and as assignee of Adrenaline Games, Inc., d/b/a Country Club Paintball, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | Case No. 04 L 13330, 04 CH 18042 (cons.) |
| PAINTBALL BUSINESS ASSOCIATION, *et al.*, | ) ) ) | |
| Defendants-Appellees. | ) ) ) | Honorable Sophia H. Hall, Judge Presiding. |
| (U.S. Risk Underwriters, Inc, *et al.*, | ) ) | |
| Defendants.) | ) | |

**MODIFIED OPINION**

JUSTICE ROBERT E. GORDON delivered the modified opinion of the court:

The sole issue in this case is whether an 11-month delay in notice of an occurrence is reasonable notice to an insurance company under the provisions of its policy.

BACKGROUND

*Procedural History*

Plaintiff's minor son, age 11, sustained an injury at a paintball facility operated by Adrenaline Games, Inc., an Illinois corporation (Adrenaline). On November 3, 2003, plaintiff filed a negligence action against Adrenaline and the record on appeal indicates that a summons and a copy of the complaint was served on Adrenaline's president and sole shareholder, George Longfellow (Longfellow). However, Longfellow did not recall being served with the lawsuit.

1

Longfellow did not immediately inform his insurance company, defendant Northland Insurance Company (Northland), of the incident or of the lawsuit immediately after it was filed. When Adrenaline failed to answer or otherwise plead in the lawsuit, plaintiff filed a motion for entry of a default on February 17, 2004.

On February 25, 2004, upon receipt of the motion and before a default was entered, Longfellow notified Nathan Smith, an office manager at ILM, Inc. (ILM), Longfellow's insurance agency that had sold Longfellow his policy. Neither Adrenaline nor ILM notified Northland of the incident, the lawsuit, or the motion for default prior to the entry of a default judgment.

No one appeared on behalf of Adrenaline at the hearing on the motion for default held on March 5, 2004. The trial court entered a default order against Adrenaline and, later, at the prove-up held, awarded damages in the amount of $6,615,293. On June 25, 2004, plaintiff then filed a garnishment action and Longfellow, on behalf of Adrenaline, then hired an attorney. On September 1, 2004, the attorney notified Northland of the incident and the lawsuit.

After receiving notice from Adrenaline's attorney, Northland waited 34 days before it agreed to compensate Adrenaline's attorney to bring a motion to vacate the default. On September 29, 2004, Adrenaline's lawyer filed a motion to vacate the default pursuant to section 2-1401 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-1401 (West 2000)), which was denied.

On November 1, 2004, Northland filed a declaratory action in the chancery division against both Adrenaline and plaintiff seeking a determination that it did not owe a duty to defend

2

or indemnify Adrenaline. Adrenaline, which was unable to pay anything on the judgment, then assigned all of its rights against Northland and ILM to plaintiff. On November 30, 2004, plaintiff then filed a complaint against Northland and ILM in the law division for their failure to provide insurance coverage. Northland and ILM each filed an answer, asserting as an affirmative defense that Adrenaline breached a policy condition by failing to notify Northland "as soon as practicable" of the incident. Both lawsuits were consolidated into the declaratory action.

The parties filed cross-motions for summary judgment on the sole issue of reasonable notice of the occurrence. Northland and ILM claimed that the 11-month delay in notifying Northland of the incident was a breach of their policy and constitutes late notice as a matter of law. Plaintiff claimed that the 11-month delay was not a breach of the policy and was reasonable notice under the circumstances because (1) Longfellow was unsophisticated in commerce and insurance; and (2) Longfellow reasonably believed that no claim would be made concerning the incident. The trial court granted Northland and ILM's motion for summary judgment and denied plaintiff's motion for summary judgment. Plaintiff then filed this timely appeal.

*Evidence on Summary Judgment Motion*

The undisputed facts are as follows. The underlying lawsuit in this insurance dispute arises from an injury sustained by plaintiff's minor son, Joseph, at Country Club Paintball, located in Glenwood, Illinois. "Paintball" is a sport where individuals or teams attempt to eliminate opponents by firing round, gelatin capsules filled with dye, which are known as "paintballs." The paintballs are fired from guns powered by compressed gas, and these guns are known as "paintball markers." The paintballs burst on impact, releasing the dye. When

3

participants exit from the Country Club paintball arena and enter the lobby, the facility staff require the participants to place protective coverings known as "barrel socks" over the barrels of the paintball markers to prevent an accidental discharge of a paintball.

On March 21, 2003, Joseph, age 11, was at the paintball facility attending a birthday party for the son of Drs. Susan and Daniel Rowan, who were also present. While the party was in the facility's lobby, a paintball marker discharged. The paintball marker's barrel sock failed to stop the discharged paintball. Joseph was struck in the left eye with the paintball and sustained an eye injury. Dr. Daniel Rowan, a physician, attempted to clean out the wound before Joseph was transported by ambulance from the facility to a hospital. Longfellow was present at the facility and had knowledge of when the incident occurred.

In 2001, Longfellow originally purchased a commercial general liability insurance (CGL) policy for the paintball facility through ILM, a wholly owned subsidiary of American Sports Development Group, Inc. At the time, ILM was doing business as Paintball Business Association, which was licensed to sell insurance in Illinois and was also a business association in the paintball industry. ILM has also done business as Specialty Insurance Services. National Sports Entertainment and Recreation Association is a name ILM used on its Internet Website to represent the multiple services that it provided in the paintball industry.

ILM procured the insurance for the paintball facility through an insurance broker, Midland Insurers Corporation, d/b/a MIC Insurance Brokerage (MIC). Northland wrote the policy that was issued to Adrenaline. Adrenaline did not report any claims during the initial term of its policy and Adrenaline renewed the policy through ILM.

1-08-1156

Northland issued a CGL policy to Adrenaline for the period from June 1, 2002, through June 1, 2003, with policy limits of $1 million for each occurrence with a $2 million aggregate. The Northland policy provides, in pertinent part:

"2.  Duties In The Event Of Occurrence, Offense, Claim or Suit

a.  [The insured] must see to it that we are <u>notified as soon as practicable</u> of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

(1)  How, when and where the "occurrence" or offense took place;

(2)  The names and addresses of any injured persons and witnesses; and

(3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.  If a claim is made or "suit" is brought against any insured, [the insured] must :

(1)  Immediately record the specifics of the claim or "suit" and the date received; and

(2)  <u>Notify us as soon as practicable</u>.

3.  Legal Action Against Us

No person or organization has a right under this Coverage Part:

a.  To join as a party or otherwise bring us into a "suit" asking

> for damages from an insured; or
>
> b.     To sue us on this Coverage Part unless all of its terms have been fully complied with."  (Emphasis added.)

The term "occurrence" is defined in paragraph 13 of "Section V - Definitions" of the Northland CGL policy.  That paragraph defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Paragraph 18 of that section also defines "suit" as either  "a civil proceeding," "an arbitration proceeding," or "any other alternative dispute resolution proceeding."

The evidence in the record indicates as follows.  Longfellow, on behalf of Adrenaline, completed an application and a renewal application for insurance which he received from ILM.  Longfellow mailed both applications to ILM, as instructed on the bottom of the application form.  ILM issued a certificate of insurance to Adrenaline.  ILM also mailed Adrenaline an invoice for Adrenaline's insurance premium, which Longfellow paid to ILM on behalf of Adrenaline.  Adrenaline's cancelled check to ILM for the premium amount appears in the record.

Attached to plaintiff's motion for summary judgment was the discovery deposition of Nathan Smith, an ILM office manager.  According to Smith, ILM deposited Adrenaline's premium checks into a client premium account and then forwarded the funds to Northland.

Longfellow and Adrenaline did not immediately report the March 21 incident to either Northland or ILM.  On November 3, 2003, plaintiff filed a complaint against Adrenaline in the circuit court of Cook County alleging that Adrenaline was negligent and that as a direct and proximate result of that negligence caused Joseph's eye injury (Berglind lawsuit).  According to a

6

summons attached to plaintiff's motion for summary judgment, Longfellow was served a summons on behalf of the corporation, with a copy of the complaint, on November 21, 2003.

Longfellow's discovery deposition was attached to both plaintiff and Northland's motions for summary judgment. Longfellow testified that he did not recall being served with process, and if he had, he would have sent the papers to Adrenaline's insurance company. As a result, Longfellow and Adrenaline did not immediately inform Northland or ILM of the Berglind lawsuit and failed to timely answer plaintiff's complaint. On February 17, 2004, plaintiff filed a motion for default against Adrenaline, and the trial court set the matter for a hearing on March 5, 2004.

On February 25, 2004, after receiving notice of the motion for default, Longfellow immediately telephoned ILM and told Smith that he received the motion for default. Longfellow did not testify as to whether he informed Smith of the March 5 hearing date on the motion. Smith instructed Longfellow to send the motion to ILM. That same day, Longfellow forwarded the motion for default to ILM via United Parcel Service by using next day air service. Two days later, on February 27, 2004, ILM received the motion. Longfellow telephoned ILM to verify receipt of the motion. ILM never forwarded a copy of the motion or contacted Northland concerning the motion.

On March 5, 2004, no one filed an appearance on behalf of Adrenaline, and Longfellow did not appear at the hearing for the motion for default. The trial court entered an order of default against Adrenaline for failure to answer or otherwise plead, and set the matter for a prove-up of damages by jury for May 21, 2004. On May 21, 2004, damages were proved up

before a jury, and it returned a verdict in favor of the plaintiff in the amount of $6,615,293.00. The trial court entered judgment on that verdict. No one appeared for Adrenaline at the prove-up.

On June 25, 2004, plaintiff filed a garnishment action against Adrenaline. On July 19, 2004, Longfellow hired an attorney to represent the corporation, who filed an appearance on behalf of Adrenaline. On September 29, 2004, Adrenaline's attorney filed a motion to vacate the default judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2000)).

Northland claims that it first received notice of the March 21 incident and the Berglind lawsuit on September 2, 2004. Apparently, Adrenaline's attorney had sent Northland a letter on September 1, 2004, concerning the Berglind lawsuit and the default judgment entered against Adrenaline, which Northland received on September 2, 2004. The letter is not in the record. Northland responded to Longfellow and Adrenaline in a letter dated October 6, 2004, 34 days later, which is in the record. In the October 6 letter, Northland claimed that it did not owe coverage for the default judgment for several reasons, including: (1) Adrenaline's failure to notify Northland pursuant to its insurance policy "as soon as practicable" of the occurrence; (2) Adrenaline's failure to notify Northland "as soon as practicable" of the Berglind lawsuit; and (3) Adrenaline's failure to send Northland copies of any notices or other legal papers immediately after receipt. In the October 6 letter, Northland also agreed, under a reservation of rights, to reimburse Adrenaline's attorney fees to file a motion to vacate the default judgment.

Adrenaline did not have funds to pay anything on the judgment and on November 1, 2004, Northland filed a complaint for declaratory judgment pursuant to section 2-701 of the

Code (735 ILCS 5/2-701 (West 2000)), against Adrenaline and the plaintiff, seeking a determination that Northland did not have a duty to defend or indemnify Adrenaline in connection with the Berglind lawsuit, default judgment, or garnishment action. On November 16, 2004, the trial court denied Adrenaline's motion to vacate the default judgment.

As noted, Adrenaline and Longfellow did not have funds to pay the judgment and on November 22, 2004, Adrenaline assigned all of its rights against Northland and ILM to the plaintiff in exchange for plaintiff's deferring collection of the default judgment and forgiving or extinguishing the collection of the default judgment in the event that plaintiff reached a settlement with, or obtained a verdict against, Northland and ILM to the claims assigned.

On November 30, 2004, plaintiff filed a two-count complaint against Northland and ILM claiming that Northland and ILM failed to provide coverage to Adrenaline in the Berglind lawsuit and default judgment.[1] The complaint was amended on three occasions. Count I claimed that Northland and its authorized agents, ILM, failed to provide coverage to Adrenaline in the Berglind lawsuit and default judgment. Count II claimed that ILM independently failed to provide coverage to Adrenaline in the Berglind lawsuit and default judgment. Northland and ILM both filed answers, each asserting an affirmative defense that Adrenaline failed to provide timely notice concerning the March 21 incident. On May 13, 2005, the trial court consolidated the plaintiff's action with Northland's declaratory judgment action.

---

[1] MIC and U.S. Risk Underwriters were also defendants in the Berglind lawsuit. However, the trial court granted their motions to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2000)). They are not defendants in this appeal.

Longfellow testified in his discovery deposition that, in 1995, he formed Adrenaline with a partner, in which he served as its manager. Longfellow testified that he purchased his partner's interest in Adrenaline and became president and sole owner of the corporation in 1999. Longfellow testified that he was in charge of Adrenaline's insurance, completed applications for insurance on behalf of Adrenaline, and filed insurance-related documents, including his insurance policies, at the Country Club Paintball facility.

Longfellow testified that he had a fall-down accident at the paintball facility in 2000. He testified that he was aware that it was his obligation to notify his insurance company as soon as he was aware of an injury caused by an accident, or a lawsuit filed against Adrenaline. A lawsuit was filed in the 2000 accident, and Longfellow immediately notified Adrenaline's insurance company.

Northland attached two affidavits submitted by Longfellow to its motion for summary judgment that were initially submitted in support of Adrenaline's "Petition to Vacate Conditional Judgment" in the Berglind lawsuit. The first affidavit is dated September 24, 2004 and stated that the first notice of the Berglind lawsuit Longfellow received on behalf of Adrenaline was the receipt of the motion for default. Longfellow claimed Adrenaline received that motion on February 25, 2004.

The second affidavit is dated October 20, 2004, and stated as follows:

"5. As I sit here today I still do not recall receiving [the summons and the copy of the complaint]. However, I do note that it was allegedly served on me at 5:26 p.m. on Friday, November 21, 2003.

10

6. If this date and time is accurate, it would have been when I was at Country Club Paintball on a Friday evening prior to [T]hanksgiving. This would have been a very, very hectic and busy time for me, and it is quite possible this is why I do not recall this happening.

7. If it was served during a time when it is so busy at the club *** [i]t is possible I just set it aside and totally forgot about it. I say that because if I knew we had been sued, I would have had no reason not to call the attorney like I did when I received other documentation."

Additionally, in Smith's discovery deposition attached to plaintiff's motion for summary judgment, Smith testified that when he spoke to Longfellow on February 25, 2004, Longfellow told him "[Adrenaline] had been served paperwork in November or sometime in there, and that was the basis for which I knew [Adrenaline] was being sued."

Longfellow's discovery deposition does not indicate whether Adrenaline received a notice of an attorney lien from plaintiff's attorney or any other correspondence from plaintiff's attorney. Those questions were never asked of Longfellow. Longfellow testified that after he received the motion for default, he telephoned plaintiff's attorney because he did not understand the significance of the motion. Longfellow testified that plaintiff's attorney instructed him to contact Adrenaline's insurance company, which Longfellow testified that he did. When asked to clarify whether by "insurance company" he meant Northland or ILM, Longfellow responded, "I thought they were the same."

According to the evidence in the record, on July 14, 2004, ILM faxed an incident report

form to Longfellow to complete, on behalf of Adrenaline, concerning the March 21 incident. Longfellow testified in his deposition that he did not complete the incident report but, instead, gave the form to Adrenaline's attorney.

On October 22, 2007, the parties filed cross-motions for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2004)), with supporting memorandum, on the sole issue of late notice of occurrence. Plaintiff claimed that Adrenaline's delay of notice of occurrence was reasonable under the circumstances because (1) Longfellow was unsophisticated in commerce and insurance; and (2) Longfellow reasonably believed Joseph's injury was not serious enough that a claim would be made concerning the incident. Northland and ILM claimed that the 11-month delay (from the time of the injury to the time that notice was provided to ILM) was unreasonable and constituted late notice as a matter of law.

Northland and ILM stipulated that Longfellow's notice to ILM imputed notice to Northland for the purposes of the summary judgment motions filed before the trail court. Therefore, Longfellow's notice to ILM of the motion for default to ILM imputed notice to Northland for the purposes of this appeal.

On April 4, 2008, the trial court granted Northland and ILM's motions for summary judgment, and denied plaintiff's cross-motion for summary judgment. The trial court found that the 11-month delay was not timely and that Longfellow was "experienced enough under the facts in the case to know of the possibility of a claim" and "was aware of the occurrence at the time." The trial court found that the 11-month delay constituted late notice of an occurrence as a matter of law under Northland's insurance policy provisions. The trial court further found that because

notice was late as a matter of law when ILM received it, ILM could not be held liable for any omission in failing to inform Northland. Plaintiff timely filed a notice of appeal, and this appeal followed.

## ANALYSIS

On appeal, plaintiff claims that the trial court erred in granting summary judgment in favor of Northland and ILM and denying his cross-motion for summary judgment. Specifically, plaintiff argues that the 11-month delay was reasonable under the circumstances because: (1) Longfellow was unsophisticated in commerce and insurance; and (2) Longfellow reasonably believed that the no claim would be made concerning the incident.

### Standard of Review

The use of summary judgment aids in the expeditious disposition of a lawsuit, but summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. 735 ILCS 5/2-1005(c) (West 2004); *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). Summary judgment is properly granted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004); *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). A trial court's grant of summary judgment is a question of law and subject to *de novo* review. *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141, 149 (2003).

Initially, Northland and ILM suggest in their briefs that this court strike or disregard

13

certain portions of plaintiff's brief that address (1) reasons for the late notice of suit, and (2) the course of dealings between Adrenaline and ILM resulting in an apparent agency relationship with Northland. Northland claims that portion of the brief is improper and irrelevant to the issue on appeal, namely, whether the 11-month delay was late notice as a matter of law. We decline to do so.

When conducting a *de novo* review, we may affirm a grant of summary judgment on any basis contained in the record, regardless of whether the trial court relied upon that basis. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004); *Founders Insurance Co. v. White*, 367 Ill. App. 3d 883, 887-88 (2006).

*Notice in a Reasonable Period of Time*

Since Northland stipulated that the notice of the motion for default given to ILM was notice to Northland for the purposes of the summary judgment being appealed from, we must determine whether that notice met the requirements of the Northland policy's notice provision.

It is well established that notice provisions are not merely technical requirements but, rather, conditions precedent to the triggering of the insurer's contractual duties. *Zurich Insurance Co. v. Walsh Construction Co. of Illinois Inc.*, 352 Ill. App. 3d 504, 508 (2004); *Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.*, 313 Ill. App. 3d 457, 464 (2000); see also *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311 (2006) (notice provisions are "valid prerequisites to insurance coverage"); *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 281 (1974) (same). The purpose of an insurance policy's notice provision is to ensure that the insurer will be able to

timely investigate and defend claims against its insured. *Walsh Construction*, 352 Ill. App. 3d at 508; *Northbrook Property*, 313 Ill. App. 3d at 464 (2000); *American States Insurance Co. v. National Cycle, Inc.,* 260 Ill. App. 3d 299, 310-11 (1994).

The notice provision contained in the Northland insurance policy required Adrenaline to provide Northland with notice of an occurrence "as soon as practicable." The Illinois Supreme Court has established that an insurance policy condition requiring notice "[a]s soon as practicable" means "within a reasonable time." *Livorsi Marine*, 222 Ill. 2d at 311 (quoting *Barrington Consolidated High School*, 58 Ill. 2d at 282); *State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 431 (1991). The determination of what constitutes a reasonable period of time depends on the facts and circumstances of each case. *Livorsi Marine*, 222 Ill. 2d at 311-12; *Burgos*, 145 Ill. 2d at 431; *Twin City Fire Insurance Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 7 (1993). A question of what constitutes "within a reasonable time" is generally a question of fact. However, when there is no controversy as to the facts, the question of what constitutes "within a reasonable time" becomes a question of law. *Olivieri v. Coronet Insurance Co.*, 173 Ill. App. 3d 867, 871 (1987).

An insured is expected to act diligently when providing notice to its insurer. *Northbrook Property*, 313 Ill. App. 3d at 465 (2000). However, a lengthy passage of time in notification is not an absolute bar to a claim of defense or indemnity under an insurance policy, even under the "as soon as practicable" provision, so long as insured's delay in notifying insurer is justifiable. *Northbrook Property*, 313 Ill. App. 3d at 465; *Northern Insurance Co. of New York v. City of Chicago*, 325 Ill. App. 3d 1086, 1092 (2001) ("insured who knows a suit against it exists but

15

allows considerable length of time to pass before notifying insurer does not automatically lose coverage"); *American Country Insurance Co., v. Efficient Construction Corp.*, 225 Ill. App. 3d 177, 181 (1992) ("lengthy passage of time is not an absolute bar to coverage"); *McFarlane v. Merit Insurance Co.*, 58 Ill. App. 3d 616, 619 (1978) (same).

Factors the courts may consider in determining reasonable notice include: (1) the specific language of the policy's notice provisions; (2) the degree of the insured's sophistication in the world of commerce and insurance; (3) the insured's awareness that an occurrence as defined under the terms of the policy has taken place; (4) the insured's diligence and reasonable care in ascertaining whether policy coverage is available once the awareness has occurred; and (5) any prejudice to the insurance company. *Livorsi Marine*, 222 Ill. 2d at 313, citing *Northbrook Property*, 313 Ill. App. 3d at 466; *American Family Mutual Insurance Co. v. Blackburn*, 208 Ill. App. 3d 281, 288 (1991).

*The Insured's Sophistication*

First, the record indicates that the insured was not sophisticated in the world of commerce and insurance. In the case at bar, Joseph was injured at the paintball facility on March 21, 2003. According to the sheriff's return of summons, Adrenaline was served with the complaint through Longfellow eight months later on November 21, 2003. Longfellow testified that he does not recall being served with process. Approximately three months later, on February 25, 2004, Adrenaline was served with notice that plaintiff had filed a motion for default. Longfellow immediately informed ILM of the motion and sent the motion to ILM via overnight delivery. On February 27, 2004, ILM received the motion. On March 5, 2004, the trial court entered an order

16

for default, and 77 days later, on May 21, 2004, entered a monetary judgment on the default after a jury found damages in the amount of $6,615,293.

In our analysis of the facts of this case, we must refer to the discovery deposition of Longfellow, which was attached to the plaintiff and Northland's motions for summary judgment.

Longfellow testified that he has never owned any real estate and was a high school dropout. He worked for the City of Chicago Heights apparently as a laborer, tended bar, cleaned bars in a janitorial service, did carpentry construction work, ran a teen dance club working for someone else, and then went into the paintball business. In 1995, his girlfriend Laurie Brands formed Adrenaline; and he took it over in 1999 when they split up. He testified that he was the owner and manager of Adrenaline after 1999. When Longfellow was asked: "Q: Were you the registered agent?" He answered, "I don't understand."

Longfellow testified that when he receives letters or other documents in the mail that he does not understand, he throws them away or places them in a file. Longfellow further testified that in March of 2003, his business had 10 employees, some were paid in cash, and others, by check. He did not believe he carried workers' compensation insurance and claimed there were no state requirements that he was required to comply with in operating his paintball facility.

Longfellow testified that he was sued in 2000 by a lawyer, John Clifford, who fell on a slippery floor. He turned the suit papers over to Adrenaline's insurance company and claimed no injury was ever reported to "us." Longfellow testified that if he had been aware of the injury he would have reported it to Adrenaline's insurance company. In the year 2000, he understood that it was necessary to promptly notify Adrenaline's insurance company of a claim or a lawsuit.

Longfellow testified that Dr. Daniel Rowan identified himself as a physician at the scene of the March 21 incident and washed out Joseph's eye. Longfellow testified that he "was totally relieved because everything looked great." The child was sitting calmly and "there was no damage." Longfellow testified that it never occurred to him to contact Adrenaline's insurance company about the incident in 2003 because he thought the child was fine. Longfellow testified that he does not recall being served with a lawsuit, and if he had he would have immediately notified Adrenaline's insurance company. He further testified that the incident in question was the first eye injury that occurred at Adrenaline's paintball facility.

We cannot say the 11-month delay in notification was unreasonable as a matter of law under the facts and circumstances of this case. First, the evidence in the record indicates that Longfellow lacks experience in insurance matters so as to qualify him as a sophisticated insured. "The standard used in determining an insured's sophistication is based on his experience not only in the world of commerce but also insurance." *Brotherhood Mutual Insurance Co. v. Roseth*, 177 Ill. App. 3d 443, 449 (1988), citing *Brownlee v. Western Chain Co.*, 74 Ill. App. 3d 804 (1979).

Based on the evidence in the record, the only experience Longfellow appears to have with insurance is merely purchasing the CGL policy for the paintball facility from an insurance agent. There is nothing in the record that indicates he had any other experience or education in insurance to qualify him as a sophisticated insured. Compare *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232,233 (1983) ("experienced insurance agent" considered sophisticated insured) with *Long v. Great Central Insurance Co*, 190 Ill. App. 3d 159, 169 (1989), *appeal denied*, 129 Ill. 2d 564 (1990) (lacking other evidence in the record, dramshop owner considered

"unschooled layman" in insurance matters); and *Roseth*, 177 Ill. App. 3d at 450 (homeowners who "had never taken courses in insurance and had no other experience relative thereto" considered unsophisticated insureds when deciphering homeowners' insurance policy).

Longfellow's experience in insurance matters includes a previous lawsuit that he immediately forwarded to Adrenaline's insurance company denying he knew that the plaintiff slipped and fell on his premises. Longfellow did acknowledge that he knew that injuries needed to be immediately reported, but that he thought plaintiff's minor son sustained no damage or injury after his eye was washed out.

There is also no evidence in the record that Longfellow had outside counsel or other assistance with his insurance matters that would supplement his personal lack of insurance experience and qualify him as a sophisticated insured. *Cf. Northbrook Property*, 313 Ill. App. 3d at 467 (corporation engaged in business of developing computer software for the insurance industry obtained more than one commercial liability policy and retained in-house and outside counsel "was not an unsophisticated insured"); *Northern Insurance*, 325 Ill. App. 3d at 1093 (City of Chicago, "one of the largest municipalities in the country and possessing its own in-house legal department, is hardly unsophisticated in a commercial and insurance matters"). There is also nothing in the record that shows that Longfellow took certain actions following the incident that would evidence a level of sophistication in insurance. See, *e.g.*, *Board of Education of Township High School District No. 211 v. TIG Insurance Co.*, 378 Ill. App. 3d 191, 196 (2007) (school board found to be "not [an] *** unsophisticated insured," when after two months of discovering asbestos in a school building, board conducted asbestos analysis, removed

asbestos from all of its buildings, and retained an attorney before notifying insurance company asbestos had been found).

As noted, Longfellow knew lawsuits had to be forwarded to Adrenaline's insurance company upon receipt, but denies being served with process for the Berglind lawsuit. He also knew that injuries had to be reported, but in his unsophisticated mind, he thought the plaintiff's minor son had no injury after his eye was washed out. The movant in a motion for summary judgment has the burden to prove as a matter of law that there is no question of fact to be decided by the trier of fact. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). There is nothing in the record of this case as to whether Adrenaline received a notice of attorney's lien, which would have put Adrenaline and Longfellow on notice that an injury occurred and a claim was being made. Thus, there still is an issue of fact that needs to be decided. In sum, there is not enough evidence in the record that indicates Longfellow was experienced enough to qualify as a sophisticated insured as a matter of law.

*The Insured's Awareness of an Occurrence*

Second, while Longfellow was present at the facility at the time of the March 21 incident, we cannot say that, as a matter of law, Longfellow's determination that the incident would not result in an insurance claim against his general liability policy was an unreasonable determination. "It cannot be plausibly said that by the notice provision the insurer intended that every occurrence or accident had to be reported to it." *Barrington Consolidated High School*, 58 Ill. 2d at 282-83 (1974); *Efficient Construction*, 225 Ill. App. 3d at 181-82 (1992) ("[a]n insured is not required to report every injury it is aware of, it is only required to report those injuries

20

which a reasonable person would understand is likely to lead to a claim").

The nature of a game of paintball suggests that injuries to participants are highly likely to occur because the game entails participants firing paintballs at one another. Here, although the injury took place outside the playing arena, the injury occurred when a paintball marker was fired, which is the same injury likely to occur in the playing arena. While Longfellow's presence at the facility at the time of the incident provided him with an opportunity to assess whether his business could be held liable for the March 21 incident, we cannot say his erroneous assessment was unreasonable as a matter of law. See, *e.g.*, *Rivota v. Kaplan*, 49 Ill. App. 3d 910 (1977) (insured's belief that an incident may not be covered under insurance policy, though erroneous, may excuse a delay in notice); *Commercial Underwriters Insurance Co. v. Aires Environmental Services, Ltd.*, 259 F.3d 792, 798 (7th Cir. 2001) (insured's conclusion that no claim would be filed was not an unreasonable determination, even though erroneous and management experienced in safety litigation).

### Insured's Diligence

Further, we cannot say Longfellow acted without diligence. On a motion for summary judgment, the court cannot make a credibility determination. *AYH Holdings, Inc. v. Avreco, Inc.* 357 Ill. App. 3d 17, 31 (2005); *Pietruszynski v. McClier Corp., Architects and Engineers, Inc.*, 338 Ill. App. 3d 58, 67-68 (2003). His deposition testimony reveals he did not recall receiving a summons. When he received the motion for default approximately three months after the Berglind lawsuit was filed, he immediately contacted Adrenaline's insurance agent, ILM, and spoke with Nathan Smith, an office manager. Longfellow then sent the motion to ILM via next

day air service and telephoned ILM to confirm that the agency received the motion. Adrenaline's notification to ILM occurred prior to the trial court entering a default order on March 5, and 77 days before the trial court entered a judgment on the default order on May 21.

*Prejudice*

On this record, we cannot conclude that prejudice occurred at the time Northland received notice through ILM, because it had the opportunity to vacate the default before the prove-up of damages. See *Livorsi Marine, Inc.*, 222 Ill. 2d at 317. While 11 months had passed since the March 21 incident, there is no dispute that Longfellow provided notice of the occurrence before an order of default was entered in the Berglind lawsuit and before a judgment was entered on the default. See *Rivota*, 49 Ill. App. 3d at 920 (finding no prejudice when notice given before an order of default or judgment on the default had been entered). When Northland's agent for notice, ILM, received the motion for default, Northland still had the opportunity to hire counsel and attempt to vacate the default order.

Based on these facts and circumstances, we cannot say that the 11-month delay in notifying Northland of the March 21 incident was unreasonable as a matter of law because there are factual issues that must be decided by the trial court.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County on Northland and ILM's motion for summary judgment and affirm the judgment of the circuit court on its denial of plaintiff's motion for summary judgment. There are still questions of fact

that remain to be decided as to the issue of late notice of occurrence so that granting summary judgment in favor of Northland and ILM was not proper.

Affirmed in part; reversed in part.

J. GORDON and McBRIDE, JJ., concur.