In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 17-1700

STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY,

*Plaintiff-Appellant*,

*v.*

BRUMIT SERVICES, INC., AN ILLINOIS CORPORATION, et al.,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:15-cv-00956 — **Nancy J. Rosenstengel**, *Judge*.

———————————

ARGUED OCTOBER 26, 2017 — DECIDED DECEMBER 11, 2017

———————————

Before FLAUM, RIPPLE, and MANION, *Circuit Judges*.

MANION, *Circuit Judge*. In this insurance dispute, insurer State Auto Property and Casualty Insurance Company seeks a declaratory judgment that it has no duty to defend insured Brumit Services, Inc., because the latter failed to provide prompt notice of an accident that eventually led to a lawsuit. The district court concluded that the insured's 21-month delay in notifying the insurer was reasonable and awarded judgment to the insured. We disagree. Brumit's failure to provide

prompt notice of the accident was inexcusable under Illinois law. Therefore, we reverse the judgment of the district court.

## I. Background

Carl Brumit owns Brumit Services, Inc., a small business that performs residential concrete construction work. The company has two employees and operates out of Brumit's home. On behalf of the company, Brumit purchased a Business Auto Liability insurance policy from State Auto to cover the truck he used for the business.[1] Like most auto insurance policies, Brumit's policy provided that State Auto would defend and indemnify Brumit in the event he was sued for an accident causing bodily injury or property damage. However, State Auto had "no duty to provide coverage" unless Brumit complied with his duties under the policy, one of which was that Brumit "must give [State Auto] prompt notice of the 'accident' or 'loss.'"

On September 6, 2013, Brumit was in the parking lot of a Phillips 66 gas station in Columbia, Illinois, with the covered truck. When he backed out of his parking space, he unwittingly struck 68-year-old Delores Menard with the truck's tailgate. Menard fell and suffered scrape wounds on her elbow and knee. She was treated by an EMT and declined a trip to the hospital, instead choosing to drive herself home. For his part, Brumit was unaware that he had hit Menard until a bystander alerted him as he was driving away. He then came back to the scene, called for an ambulance, and provided the police officer at the scene with a statement. He observed that

---

[1] For clarity, we use "Brumit" to refer interchangeably to Brumit Services and Carl Brumit personally.

Menard was sitting down and "may have had a scratch on her knee."

After everyone parted ways, Brumit thought the incident so minor that he was not required to report it to State Auto. But on June 22, 2015, he was served with a lawsuit in Illinois state court in connection with the accident. Menard alleged in the state court complaint that the accident caused her to "sustain severe, permanent and permanently disabling injury; including injuries to her back and spine and the soft tissue structures thereof." She sought damages in excess of $50,000. Her husband also sued Brumit, alleging, among other things, loss of consortium.

The next day, Brumit notified State Auto that he had been sued. State Auto then sought a declaratory judgment in the district court that it had no duty to defend Brumit in the lawsuit because Brumit had breached the policy's notice requirement. The parties filed cross-motions for summary judgment; the district court granted Brumit's motion and denied State Auto's. *State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 245 F. Supp. 3d 1048 (S.D. Ill. 2017). The court concluded that Brumit's 21-month delay in notifying State Auto about the accident was reasonable as a matter of law. This appeal followed.

## II. Analysis

### A.  Standard of Review and Governing Law

This case comes to us on cross-motions for summary judgment with no disputed facts, so we review the district court's legal conclusions *de novo*. "Where facts are not disputed, if a district court grants one party's motion for summary judgment and denies the other party's cross-motion, this court can

reverse and award summary judgment to the losing party below." *Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993). The parties agree that Illinois law applies. Our job is to apply Illinois law to the undisputed facts of this case.

### B. Overview of Applicable Law

"In construing an insurance policy, we must ascertain and give effect to the intentions of the parties, as expressed in the policy language." *West Am. Ins. Co. v. Yorkville Nat'l Bank*, 939 N.E.2d 288, 293 (Ill. 2010). "Unambiguous words in the policy are to be given their plain, ordinary, and popular meaning." *Id.* By contrast, ambiguous terms should be construed liberally in favor of coverage. *Id.* In short, Illinois courts construe insurance policies just like other contracts; the rule suggesting that courts should construe ambiguous provisions in favor of coverage is analogous to the general canon that a contract ought to be construed against the party that drafted it.

The Illinois Supreme Court has repeatedly held that notice provisions in insurance policies are reasonable. As the court explained in *Barrington Consolidated High School v. American Insurance Co.*, 319 N.E.2d 25, 27 (Ill. 1974), "[a] provision in an insurance liability policy requiring an insured to give the insurer notice of an accident is a reasonable policy requirement, one which affords the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence." These "are not merely technical requirements but are conditions precedent to an insurer's contractual duties." *Farmers Auto Ins. Ass'n v. Burton*, 967 N.E.2d 329, 333 (Ill. App. Ct. 2012). Therefore, as the policy in this case provides, breach of a notice requirement absolves the insurance company of any obligation to defend or indemnify the insured. *Id.*

at 334 (citing *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 343 (Ill. 2006)).

When a notice provision becomes the subject of a dispute, Illinois courts have read such provisions as requirements that the insured provide notice within a reasonable time. See *id.* (citing *Yorkville*, 939 N.E.2d at 293–94). The Illinois Supreme Court considers five factors in assessing the reasonableness of a delay in giving notice: "(1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *Yorkville*, 939 N.E.2d at 293–94. No one factor trumps the others in this totality-of-the-circumstances analysis. See *Livorsi Marine*, 856 N.E.2d at 346 (explaining that an insurer need not be prejudiced in order to insist on reasonable notice of an accident).

## C. Application of the *Yorkville* Factors

The district court held that each *Yorkville* factor weighed in favor of Brumit's position that his 21-month delay in notifying State Auto was reasonable. We disagree. Instead, we conclude that each factor tilts in favor of the unreasonableness of the delay. We discuss each factor in turn.

### 1. Policy Language

We begin with the language of the policy. Its terms are unmistakably clear: State Auto will have "no duty" to defend an insured unless the insured provided "prompt notice" of the accident at issue, and the insured "must" report any accident. The notice provision is "couched in mandatory terms." *Am. Standard Ins. Co. of Wis. v. Slifer*, 919 N.E.2d 372, 377 (Ill. App.

Ct. 2009); see also *Andrews v. Foxworthy*, 373 N.E.2d 1332, 1335 (Ill. 1978) ("The use of the words 'shall' or 'must' is generally regarded as mandatory."). Because nobody can dispute that an accident occurred when Brumit backed his truck into Menard, the mandatory language in the policy imposed "a contractual obligation to promptly report" the accident. *Slifer*, 919 N.E.2d at 377.

Despite the unambiguous language, the district court concluded that it wouldn't make sense for State Auto to want to know about "each and every accident its insureds are involved in," because its "phones would never stop ringing." *State Auto*, 245 F. Supp. 3d at 1057. It cited the Illinois Supreme Court's recognition that "[i]t cannot be plausibly said that by the notice provision the insurer intended that every occurrence or accident had to be reported to it." *Barrington Consol. High Sch.*, 319 N.E.2d at 28. However, the district court took that statement out of context; the Illinois Supreme Court was referring to the distinction between accidents covered by the policy and those not covered. *See id.* (the provision "obviously refers to an occurrence or accident covered by the policy"). Of course, the insurance company wouldn't want to know about an accident if "there was no ground for … a reasonable person to believe that a claim under the policy would be made." *Id.* But where such a ground does exist, the insured has a duty to report the accident. It is not our job to determine how many phone calls an insurance company is equipped to receive.

Here, any reasonable driver would recognize that the accident might lead to a claim. Although everyone at the scene on the day of the accident apparently viewed it as minor, it is fairly common for individuals involved in automobile accidents to experience injuries that don't manifest themselves

until days, weeks, or even months after the accident. Brumit even testified that he was aware such latent injuries might arise, indicating that he knew Menard might later claim to be injured as a result of the accident. Even more directly, every reasonable driver should know that making contact with a person could plausibly lead to an insurance claim or a lawsuit, especially when the contact causes the person to fall down. Striking a person is much different from bumping into a curb, grocery cart, or door. *State Auto*, 245 F. Supp. 3d at 1057. Because a reasonable person would have known that a claim might be filed after the accident, Brumit cannot avoid the mandatory policy language. This factor weighs strongly in State Auto's favor.

### 2. Brumit's Sophistication

The second factor is Brumit's sophistication in matters of commerce and insurance. The district court held that Brumit "falls somewhere on the unsophisticated end of the spectrum." *Id.* at 1059. Again, we disagree. Brumit is a high school graduate who has taken two years of college courses and had about eight years of experience working elsewhere when he started his own business. When the accident occurred, he had operated the business for four years and provided income for two employees. He had also purchased several insurance policies for himself, his home, and his business, and over several years surely had to renew those policies. His company also participates in workers' compensation insurance. A person in his position should be expected to possess a better-than-average understanding of commerce and insurance. Surely it is safe to say that Brumit is probably more sophisticated than a majority of insured drivers on Illinois roads.

Moreover, for the purposes of sophistication, Illinois courts have distinguished automobile insurance policies from other types of insurance, such as homeowners' insurance. In *Farmers Auto Insurance Association v. Hamilton*, 335 N.E.2d 178, 181 (Ill. App. Ct. 1975), aff'd 355 N.E.2d 1 (Ill. 1976), the appellate court explained that while a typical homeowner might not understand that he's covered by a homeowners' policy when he shoots someone on his property, that would not be the case for "an automobile accident covered by a typical insurance policy." Rather, "[t]he law is clear on the question of notice under the average automobile liability insurance." *Id.* In short, it doesn't take much expertise to interpret a basic automobile insurance policy, while a homeowners' policy "requires some study as to its various provisions." *Id.* Illinois law expects someone of Brumit's intelligence and competence to understand his rights and obligations under a basic automobile insurance policy.

The cases cited in opposition are all distinguishable on the ground that they involved either insureds far less sophisticated than Brumit or policies more complex than an automobile insurance policy. For example, the insured in *Grasso v. Mid-Century Insurance Co.*, 536 N.E.2d 977, 980 (Ill. App. Ct. 1989), was a nineteen-year-old who had never purchased her own insurance policy, while the policy in *Berglind v. Paintball Business Association*, 930 N.E.2d 1036, 1039, 1045 (Ill. App. Ct. 2010), was a commercial general liability policy, and the one in *Long v. Great Central Insurance Co.*, 546 N.E.2d 739, 741 (Ill. App. Ct. 1989), was a dram shop liability policy. No Illinois case has held that a person with Brumit's background was too unsophisticated as a matter of law to understand a basic automobile insurance policy.

The approach taken by the district court and advocated in this court by Brumit and Menard would render most people in Illinois unsophisticated as a matter of law. Only corporations, attorneys, and insurance agents would likely qualify as sophisticated insureds under this approach, leaving insurance companies to wonder whether the provisions of their policies will be enforced against the vast majority of Illinois residents. See *State Auto*, 245 F. Supp. 3d at 1058. This is not only untenable as a matter of law, but it is contrary to the Illinois Supreme Court's repeated holdings that notice provisions in insurance policies are reasonable. We cannot endorse it. Therefore, we conclude that the second factor weighs in favor of State Auto.

### 3.  Awareness of Possible Claim

The third factor we consider is Brumit's awareness that a claim might be filed. Here, the district court reasoned that "the incident was trivial, resulted in no apparent harm, and furnished no reasonable ground for Brumit to believe that a claim might arise, particularly given his lack of sophistication in insurance matters." *State Auto*, 245 F. Supp. 3d at 1060. However, we have already concluded that Brumit was sophisticated enough to understand that a claim might follow after he knocked a woman to the ground with his truck. No matter how minor the incident appeared to be at the time, a reasonable driver would understand that a claim might be filed against him in such a situation. What is more, even though Brumit knew about latent injuries, he never tried to contact Menard for any assurances that she would not file a claim or lawsuit. Cf. *Brotherhood Mut. Ins. Co. v. Roseth*, 532 N.E.2d 354, 358 (Ill. App. Ct. 1988) (late notice to insurer was excused in part because "the very nature of the relationship" between the

insured and the accident victim "and their continued contact" meant that "there was no reason to put them on notice" of a possible claim). Simply put, there was no reason for Brumit to be so sure that no claim would be filed.

Cases such as *Berglind* and *National Bank of Bloomington v. Winstead Excavating of Bloomington*, 419 N.E.2d 522, 524 (Ill. App. Ct. 1981), do not require a different result. In *Berglind*, the appellate court held that the insured, a high school drop-out who had taken over his girlfriend's paintball business, had a reasonable belief that a claim would not be filed after a child was struck in the eye by a paintball. The court explained that "in [the insured's] unsophisticated mind, he thought [the child] had no injury after his eye was washed out," as he was "sitting calmly" and "everything looked great." *Berglind*, 930 N.E.2d at 1045–46. But Brumit was far more sophisticated than the insured in *Berglind*,[2] our case involves an easier-to-understand auto policy rather than a commercial general liability policy, and, as we have emphasized, Brumit knew that latent injuries were a possibility. *National Bank of Bloomington* is even further afield, as in that case the insured was merely pulling onto a highway when a truck driving too fast behind him flipped over and landed in the median. Not having made any contact with the truck, or having any involvement in the accident at all, the insured had no reason to believe that a

---

[2] For example, the insured in *Berglind* was uneducated, had never owned real estate, didn't know whether he was the company's registered agent, regularly threw away mail he didn't understand, and allowed a default to be entered against him before he took any steps to notify his insurance agent. 930 N.E.2d at 1045. Brumit, on the other hand, was educated, operated his own business for four years, understood how to buy insurance, and knew exactly what to do when he was sued.

claim might be filed against him. *Nat'l Bank of Bloomington*, 419 N.E.2d at 524–25. Brumit of course knew that he was the cause of the minor injuries Menard sustained at the scene, so he had no excuse not to notify State Auto that a claim might be forthcoming.

The upshot is that "[a]n insured cannot simply roll the dice with the insurer's funds, hiding behind the statistical probabilities it has assigned to the case outcome." *Kerr v. Ill. Cent. Ry. Co.*, 670 N.E.2d 759, 768 (Ill. App. Ct. 1996). "[T]he burden to an insured to give notice is slight, whereas the repercussions felt by an insurer due to late notice can be substantial." *Id.* Brumit's own calculations—that the accident was minor and Menard was okay—are not a sufficient excuse to leave his insurer in the dark about the accident. Had it received timely notice, State Auto would have been in a far better position than Brumit to determine the possibility that a claim or suit would be filed. Therefore, we weigh this factor in favor of State Auto.

### 4. Brumit's Diligence

The fourth *Yorkville* factor is Brumit's diligence in ascertaining whether the accident would be covered. Here, we strongly disagree with the district court's conclusion that "[t]here is very little [Brumit] could have done to be *more* diligent." *State Auto*, 245 F. Supp. 3d at 1061. On the contrary, the undisputed facts reveal that Brumit did *nothing* other than glance at his policy during the 21 months after he hit Menard. He did not call anyone to try to determine whether a claim might be filed against him. Instead, he relied upon his own assumptions that Menard was not badly injured to determine that he wouldn't have to notify State Auto. But of course, "an insured's subjective beliefs must give way to an objective

standard of reasonableness based on all the circumstances." *Kerr*, 670 N.E.2d at 768. A reasonable driver would have at least called his insurance agent to determine whether the accident should have been reported. Because Brumit failed to do even that, we conclude he was not diligent and weigh this factor in favor of State Auto.

### 5. Prejudice to State Auto

The final factor we consider is to what extent Brumit's delay prejudiced State Auto.[3] Brumit says early notification would have made no difference, because the evidence would not have been any different if he had called State Auto the day after the accident. But that is not necessarily true. As the Illinois Supreme Court explained, a notice provision "affords the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence." *Barrington Consol. High Sch.*, 319 N.E.2d at 27. This case involves latent injury and the potential interaction between the accident and a pre-existing medical condition, so early notification would have given State Auto the opportunity to do its own investigation into Menard's injuries. Perhaps State Auto could have gathered medical evidence that would help it defend against a claim that the accident caused the severe injuries alleged in the state court complaint. Because of Brumit's failure to comply with the notice provision, we will never know. That is the problem.

---

[3] We note that the Illinois Supreme Court has held that an insurer need not prove that it was prejudiced in order to insist upon compliance with a notice requirement. *Livorsi Marine*, 856 N.E.2d at 346 ("[E]ven if there is no prejudice to the insurer, a policyholder still must give reasonable notice according to the terms of the insurance policy.").

Moreover, compliance with the notice provision would have allowed State Auto to contact Menard to determine her willingness to settle. While Menard claimed at her deposition that she would not have settled, that might not have been the case had she been contacted by a State Auto representative in the weeks after the accident. As the Illinois appellate court put it, "[p]erhaps settlement would have been discouraged, and perhaps not. In our view, having the right to so act is part of the benefit of the prompt-notice provision." *Am. Family Mut. Ins. Co. v. Blackburn*, 566 N.E.2d 889, 896 (Ill. App. Ct. 1991). Brumit's breach exposed State Auto to significant uncertainty and deprived it of the benefit it expected to receive from the notice provision. Therefore, we hold that State Auto was prejudiced and weigh this factor in its favor.

### 6. Summation of the *Yorkville* Factors

We conclude that each of the factors for consideration under Illinois law weighs in favor of a finding that Brumit's 21-month delay was unreasonable as a matter of law. Brumit breached a mandatory notice provision without a reasonable excuse. As a small-business owner with two years of college and multiple insurance policies, he was sophisticated enough to understand that striking a person with his truck might lead to an insurance claim or a lawsuit. But instead of notifying State Auto, he relied on his own assumptions that turned out to be wrong. In doing so, he deprived State Auto of the opportunity to do its own investigation into the accident and the source of Menard's injuries. That mistake means he cannot now rely on State Auto's defense in Menard's lawsuit.

### III. Conclusion

Insurance policies are contracts like any other. The job of a court when presented with a contractual dispute is to determine the rights and responsibilities of the parties under the contract. In this case, it was Brumit's responsibility to notify State Auto that he had been in an accident that might lead to a claim. He failed to do so, and his failure was inexcusable under Illinois law. Therefore, under the terms of the contract, State Auto has no duty to defend or indemnify Brumit in the personal injury suit arising out of the accident. State Auto is entitled to declaratory relief to that effect.

REVERSED