2022 IL App (2d) 210506
No. 2-21-0506
Opinion filed September 9, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-MR-798 |
| TRRS CORPORATION; COMMERCIAL TIRE SERVICES, INC.; and GARY BERNARDINO, | ) ) ) ) ) | Honorable Thomas A. Meyer, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Jorgensen and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendants, TRRS Corporation, Commercial Tire Services, Inc., and Gary Bernardino (collectively, TRRS) appeal from a grant of summary judgment in favor of TRRS's insurer, West Bend Mutual Insurance Company (West Bend), which denied coverage on an underlying workers' compensation and personal injury claim. We agree with TRRS that questions of fact remain that may affect the result and that thus summary judgment was premature. Therefore, we vacate and remand.

¶ 2                                   I. BACKGROUND

¶ 3　　TRRS, a local tire retreading and repair company, carried a commercial general liability and workers' compensation policy with West Bend. TRRS has a plant in Lake in the Hills, where Bernardino was the plant manager. In April 2017, Bernardino was using a forklift to install a "tire curing chamber." During the installation, Bernardino went out onto the lift's raised platform, fell off, and injured his left shoulder. This was the second time Bernardino had injured his left shoulder at work.

¶ 4　　While Bernardino was in the emergency department, Michael Sardinas, TRRS's general manager, came by to visit him. Sardinas told Bernardino that TRRS would compensate him for his lost wages and medical expenses, just as it had done with his first shoulder injury a few years earlier. Bernardino either used a company credit card to pay for his medical bills or submitted them to Sardinas for the next few months.

¶ 5　　Then, in March 2018, Bernardino hired his own counsel and began to chart a new course. First, he filed a workers' compensation claim and then a personal injury suit against TRRS and two of its suppliers. Bernardino v. Michelin North America, No. 18-LA-295 (Cir. Ct. McHenry County). When TRRS received Bernardino's notice of adjustment of claim from the Illinois Workers' Compensation Commission (IWCC), TRRS both reported the workers' compensation claim and tendered Bernardino's suit to West Bend.

¶ 6　　In response, West Bend filed this coverage action seeking a declaratory judgment that it was not obligated to cover Bernardino's claim, because it had received "late notice" of his injury, which occurred 11 months earlier. West Bend also sought a declaration that it was not obligated to reimburse TRRS for its voluntary payment of Bernardino's medical expenses before it filed its insurance claim (although the record does not indicate that TRRS sought to be reimbursed).

¶ 7    West Bend then asked the trial court to stay Bernardino's proceedings before the IWCC, which the court granted. Bernardino appealed the stay, and we reversed, explaining that West Bend's late-notice claim did not grant the trial court the authority under the doctrine of primary jurisdiction to suspend the IWCC proceedings. *West Bend Mutual Insurance Co. v. TRRS Corp.*, 2019 IL App (2d) 180934, ¶¶ 17-34. Our supreme court affirmed. *West Bend Mutual Insurance Co. v. TRRS Corp.*, 2020 IL 124690.

¶ 8    While that interlocutory appeal was pending, the parties conducted discovery and ultimately West Bend filed a motion for summary judgment. West Bend asserted that TRRS's late notice was *per se* unreasonable and dispositive. TRRS, however, maintained that the reasonableness of its notice to West Bend was a question of fact, which precluded the entry of summary judgment.

¶ 9    At a hearing, the trial court stated that it was difficult to determine the framework for evaluating such a claim under the holding in *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303 (2006). The trial court also stated that it was uncertain how to evaluate prejudice to the insurer in this context where the notice was, at the very least, delayed, even if the parties had not jointly stipulated that it was "late."

¶ 10    The trial court granted judgment in favor of West Bend. The court found that Sardinas, as a corporate manager, was a sophisticated insured and that the 11-month gap between the injury and the notice was unreasonable. The trial court also observed that "Illinois courts have found shorter delays to be 'unreasonable.' " Finally, the trial court noted that, under *Livorsi*, 222 Ill. 2d at 317, "once it is determined that the insurer did not receive reasonable notice of an occurrence or lawsuit, the policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer." TRRS appealed.

¶ 11                                    II. ANALYSIS

¶ 12    Before this court, the parties maintain the same positions they asserted in the trial court, with TRRS asserting that the reasonableness of their late notice was a question of fact. West Bend, on the other hand, asserts that reasonableness here was a matter of law and that the trial court correctly granted summary judgment. We agree with TRRS.

¶ 13    Summary judgment is proper only where the pleadings and evidence on file show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a triable question of fact exists. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 14. A genuine issue of material fact precluding summary judgment exists where the parties either dispute the material facts or, if the facts are undisputed, reasonable persons might draw different inferences from them. *Id.* ¶ 15. Our standard of review is *de novo*. *Id.*

¶ 14    We begin with the language of the insurance policy, as it is a contract between the parties. The policy provides that TRRS will notify West Bend "at once if injury occurs that may be covered by this policy." As the trial court noted, there are no Illinois cases within the last century construing the phrase "at once"; however, the word "immediately" has been uniformly interpreted to mean "within a reasonable time" or "as soon as practicable" (internal quotation marks omitted) (*West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 186 (2010)). That same interpretation seems reasonably interchangeable for the phrase "at once," and, as important, West Bend does not argue for a contrary interpretation. So, although West Bend points out that an 11-month delay is not *literally* "at once," the ultimate question is whether, under all of the circumstances, TRRS nonetheless provided West Bend with *reasonable* notice.

¶ 15    Here, unresolved issues of material fact mean that, at this juncture, we cannot say whether notice was reasonable or not. We note that, in *Livorsi*, the insureds *conceded* that the notice they gave their insurer was unreasonably late. *Livorsi*, 222 Ill. 2d at 309. But here, TRRS has asserted that their notice to West Bend *was reasonable* under the circumstances, which *a fortiori* makes *Livorsi* distinguishable.

¶ 16    Furthermore, we note that, in *Livorsi*, our supreme court identified several factors that might bear on the reasonableness of a party's untimely notice. See *id.* at 310-20. Although these factors were discussed at length, that discussion was largely tangential to the holding because, again, there the insureds had conceded that their notice was unreasonable. Instead, their argument was that the insurer needed to plead and prove prejudice arising from the late notice, even if the lateness was unreasonable, and our supreme court rejected that notion. Rather, the supreme court held that prejudice is but one factor to be considered in evaluating whether the insured's late notice was unreasonable in the first place. *Id.* at 317.

¶ 17    In addition, in *Yorkville*, 238 Ill. 2d at 185, our supreme court was clear that "[t]he timeliness of an insured's notice to its insurer generally is a question of fact for the trier of fact." The *Yorkville* court also clarified that "a lengthy delay in providing notice is not an absolute bar to coverage provided the insured's reason for the delay is justifiable under the circumstances." *Id.* at 187. Then, the supreme court restated the *Livorsi* factors as follows:

> "The following factors may be considered in determining whether notice to an insurer has been given within a reasonable time: (1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's

diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *Id.* at 185-86 (citing *Livorsi*, 222 Ill. 2d at 313).

¶ 18     By our count, the trial court in this case considered three of the five listed factors: that is, the language of the policy; whether Sardinas, the insured's general manager—as opposed to TRRS itself—was a sophisticated insured; and that Sardinas was aware of Bernardino's injury. We determine that those factors were insufficient to be dispositive at this point in the litigation.

¶ 19     The trial court neglected to consider TRRS's claims regarding whether its late notice was reasonable. Specifically, TRRS points to Sardinas's deposition, wherein he testified that he decided not to report Bernardino's injury to West Bend because it was to the same shoulder that Bernardino had previously injured, and Sardinas worried that it might be excluded from coverage as a "pre-existing condition" to Bernardino's detriment. That belief, if it was reasonable at all, was made somewhat more reasonable when one considers that Bernardino and TRRS dealt with his first shoulder injury without reporting it to their commercial insurance company. And in addition, Sardinas stated that he was uncertain what effect, if any, handling Bernardino's first shoulder injury in that fashion would have had upon coverage for his second shoulder injury. Finally, Sardinas testified that, while he believed the Lake in the Hills facility was covered under West Bend's policy, it was not one of the five sites specifically named in the policy itself.

¶ 20     These are facially valid reasons to doubt that Bernardino's second shoulder injury claim would have been covered by West Bend. Again, our task is not to evaluate the reasonableness of TRRS's claims but only to determine if they raise a fair question that would preclude the entry of summary judgment. We find that they do. TRRS's claims bear on four of the *Livorsi* factors, including the insured's sophistication, the insured's awareness, the insured's diligence, and potential prejudice to the insurer. Thus, the trial court's analysis of the *Livorsi* factors, without

taking TRRS's claims into consideration, was necessarily incomplete. "Courts have recognized that an insured's reasonable belief of noncoverage under a policy may be an acceptable excuse for the failure to give timely notice, even where the delay is lengthy." *Yorkville*, 238 Ill. 2d at 187; see also *Brotherhood Mutual Insurance Co. v. Roseth*, 177 Ill. App. 3d 443, 449 (1988) (two-year delay excused because insureds reasonably believed that an accidental shooting that occurred outside of their home would not be covered by their homeowner's policy and they reasonably believed that their friends would not file a late claim). Put differently, that proposition would have *no* currency if the mere fact that notice was "late" was the *only* dispositive issue.

¶ 21    We further note that, in contrast to the trial court, we find insufficient information to conclude that either Sardinas or TRRS were sophisticated in insurance matters. Based on the evidence in the record, the only experience Sardinas appears to have was that he acted as TRRS's representative purchasing the commercial and workers' compensation policies through a broker. And Sardinas attended a four- or five-day seminar (he could not remember which) on risk management roughly seven years before his deposition. That would make him closer to a layman than a sophisticate. *Cf.*, *e.g.*, *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 233 (1983) (upholding that an "experienced insurance agent" could be considered a sophisticated insured). There is also no evidence that Sardinas "had outside counsel or other assistance with his insurance matters that would supplement his personal lack of insurance experience and qualify him as a sophisticated insured." *Berglind v. Paintball Business Ass'n*, 402 Ill. App. 3d 76, 88 (2010).

¶ 22    With respect to TRRS, the trial court stated that "[g]enerally, corporate entities are presumed to be sophisticated" and cited *Yorkville* for that proposition. But neither *Yorkville*, nor any other decision we are aware of, states that *all* corporations are presumptively well-versed in

insurance or business matters. The insured in *Yorkville* was a bank, which was "presumed to be sophisticated in the areas of commerce and insurance" because it was a bank, which is of a different order from a generic corporation or an area tire-retreading company. See *Yorkville*, 238 Ill. 2d at 186. More must be understood about TRRS before it can be labeled a sophisticated insured. For example, in *MHM Services Inc. v. Assurance Co. of America*, 2012 IL App (1st) 112171, ¶ 64, the court found the insured party to have been sophisticated where it had both primary and excess coverage, general counsel, local litigation counsel, coverage counsel, and enough cash to pay litigation and settlement expenses. We do not know whether TRRS possessed any similar attributes.

¶ 23    Finally, although it is only one factor to be considered, it is unclear from the record what, if any, prejudice West Bend suffered as a result of TRRS's late notice. On this point, West Bend's policy told TRRS as follows: "Do not voluntarily make payments, assume obligations or incur expenses, *except at your own cost*." (Emphasis added.) That provision suggests that an insured *can* attempt to mitigate potential claims short of filing an insurance claim, else the policy would say that *no* payments could be made without notifying West Bend first. Accordingly, while it is arguable that TRRS may not be reimbursed for the payments it voluntarily made *vis-à-vis* Bernardino, it does not follow that, by making those payments, TRRS disclaimed its insurance coverage altogether.

¶ 24                               III. CONCLUSION

¶ 25    As in *Berglind*, "[w]e cannot say the 11-month delay in notification was unreasonable as a matter of law under the facts and circumstances of this case." *Berglind*, 402 Ill. App. 3d at 88. Questions remain that preclude summary judgment at this point. Accordingly, we vacate the judgment of the circuit court of McHenry County and remand for further proceedings.

¶ 26 Vacated and remanded.

*West Bend Mutual Insurance Co. v. TRRS Corp.*, **2022 IL App (2d) 210506**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 18-MR-798; the Hon. Thomas A. Meyer, Judge, presiding. |
| **Attorneys for Appellant:** | James M. Urtis, of Chicago, for appellants TRRS Corporation and Commercial Tire Service, Inc.<br><br>No brief filed for other appellant. |
| **Attorneys for Appellee:** | Thomas F. Lucas and Kristin D. Tauras, of McKenna Storer, of Chicago, for appellee. |